**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

EILEEK LORA, JEFFREY GOMEZ, SERGIO
MOSCOSO, BERNARDO MENDOZA, NICHOLAS
MITRANO, KEVIN MANCO, and WILMER MARIN
GARCIA, on Behalf of Themselves and All Others
Similarly Situated,

                                 Plaintiffs,

        -against-

TO-RISE, LLC and JORGE SALCEDO a/k/a
JORGE E. SALCEDO JR.,

                                Defendants.
-------------------------------------------------------------X

                                     **REPORT AND RECOMMENDATION**

                                       **16-CV-3604 (RRM) (ST)**

**TISCIONE, United States Magistrate Judge:**

       Plaintiffs Eileek Lora, Jeffrey Gomez, Sergio Moscoso, Bernardo Mendoza, Nicholas

Mitrano, Kevin Manco, and Wilmer Marin Garcia are former employees of Defendant To-Rise,

LLC ("To-Rise"), a business involved in the transport of office and non-perishable restaurant

supplies in and around New York City. *See* Dkt. No. 20 (the "Amended Complaint" or "Am.

Complaint") at ¶¶ 1-2; Dkt. No. 22 ("Ans. to Am. Complaint") at ¶¶ 2, 4. To-Rise is owned and

operated by Defendant Jorge Salcedo, a/k/a Jorge E. Salcedo Jr. *See* Am. Complaint at ¶ 3; Ans.

to Am. Complaint at ¶ 3. Plaintiffs brought suit on June 29, 2016 against Defendants To-Rise and

Mr. Salcedo, alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (the

"FLSA") and the New York Labor Law (the "NYLL"). *See generally* Dkt. No. 1 (Complaint); Am.

Complaint at ¶¶ 8, 9.

       On January 6, 2017, Plaintiffs filed a fully briefed motion seeking an Order (1)

conditionally certifying an FLSA collective action of similarly situated employees; (2) approving

the proposed notice and consent forms; (3) requiring Defendants to produce, in Microsoft Excel format, a list of names, titles, compensation rates, mailing addresses, email addresses, telephone numbers, social security numbers, and dates of employment of all covered employees; and (4) permitting Plaintiffs to post the notice and consent forms in Defendants' place of business. *See* Dkt. No. 35 ("Notice of Motion") at ¶¶ 1-5. In the Memorandum of Law accompanying their motion, Plaintiffs also request that the Court (5) authorize a Spanish-translation of the notice; (6) authorize a reminder notice; and (7) toll the statute of limitations, as applied to potential collective members, until "such time [as Plaintiffs] are able to send notice to potential opt-in plaintiffs." *See* Dkt. No. 35-1 (the "Motion for Conditional Certification" or "Motion for Cert.") at 15-16. For the reasons set forth below, I respectfully recommend that this motion be granted in part and denied in part.

## I.   BACKGROUND

The principal place of business of Defendant To-Rise is located at 215-14 42nd Avenue, in Bayside, New York. Am. Complaint at ¶ 51; Ans. to Am. Complaint at ¶ 51. According to the Motion for Conditional Certification, Plaintiffs were employed by To-Rise in one of four capacities: (1) to perform data entry and record-keeping ("Office Workers"); (2) to organize items in the warehouse ("Warehouse Workers"); (3) to transport office and non-perishable restaurant supplies in vehicles weighing less than 10,000 pounds ("Drivers"); or (4) to assist with loading and unloading delivery vehicles and to accompany Drivers on routes ("Drivers' Helpers").[1] *See* Motion for Cert. at 5. Ms. Lora was employed as an Office Worker at To-Rise from June 2014 through May 2016. *See* Dkt. No. 35-3 ("Lora Decl.") at ¶ 1. Mr. Gomez was employed as a Driver at To-Rise from October 2013 through October 2015. Am. Complaint at ¶ 17. Mr. Moscoso was

---

[1] The Court notes that the category described as "Drivers' Helpers" is not mentioned in the Amended Complaint. *Compare* Motion for Cert. at 4-5 *with* Am. Complaint at ¶ 4.

employed as a Drivers' Helper at To-Rise from June 2015 through October 2015, a Warehouse

Worker from October 2015 through February 2016, and an Office Worker from February 2016

through May 2016. *See* Dkt. No. 35-4 ("Moscoso Decl.") at ¶¶ 1, 4, 6, 7. Mr. Mendoza was

employed by To-Rise from July 2014 until May 2016 as, at various times, a Driver, a Drivers'

Helper, a Warehouse Worker, and an Office Worker. *See* Dkt. No. 35-5 ("Mendoza Decl.") at ¶¶

1, 4-8. Mr. Mitrano was employed as a Driver at To-Rise from October 2015 through June 2016.

*See* Dkt. No. 35-6 ("Mitrano Decl.") at ¶¶ 1, 4. Mr. Manco was employed as a Driver by To-Rise

from August 2015 through October 2015. Am. Complaint at ¶ 40. Mr. Marin was employed as a

Driver by To-Rise from February 2015 through February 2016. *See* Dkt. No. 35-7 ("Marin Decl.")

at ¶¶ 1, 4.

Plaintiffs claim that they were not paid overtime for hours worked in excess of 40 hours

per week; that they were not paid "spread of hours wages" for days on which the length of time

between the beginning and end of their workdays was greater than 10 hours; that Defendants made

unlawful deductions from Plaintiffs' wages for traffic violations; that Defendants failed to provide

Plaintiffs with proper wage notices and statements; and that Defendants have retaliated against

Plaintiffs by filing frivolous counterclaims in the instant suit. *See generally* Am. Complaint at ¶¶

182-219. Defendants deny "most, if not all" of Plaintiffs' factual allegations. Dkt. No. 36 (the

"Opposition to the Motion for Certification" or "Opp. to Motion for Cert.") at 1.

## II.   LEGAL STANDARDS

### A. Conditional Certification

Under the FLSA, an employee may sue on behalf of herself and other employees who are

"similarly situated." 29 U.S.C. § 216(b). Those "similarly situated" employees may opt-in to a

collective action brought under the FLSA, and therefore become plaintiffs, by filing a written

consent form with the Court. *Varghese v. JP Morgan Chase & Co.*, 2016 WL 4718413, at *5 (S.D.N.Y. Sept. 9, 2016); *see* 29 U.S.C. § 216(b).

The conditional certification of an FLSA collective action is a discretionary exercise of the Court's authority; it is useful as a case management tool, facilitating the dissemination of notice to potential class members. *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010) (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169, 174 (1989)). Because it is discretionary, a motion for conditional certification involves a "far more lenient" standard than a motion for class certification under Rule 23 of the Federal Rules of Civil Procedure. *Feng v. Soy Sauce LLC*, 2016 WL 1070813, at *2 (E.D.N.Y. Mar. 14, 2016).

Courts within the Second Circuit apply a two-step process to determine whether an action should be certified as an FLSA collective action. *Myers*, 624 F.3d at 554-55. In the first step, the Court will analyze the pleadings, affidavits, and declarations to determine whether the plaintiffs and potential opt-in plaintiffs are sufficiently "similarly situated" to issue notice and allow the case to proceed as a collective action through discovery. *Id.* at 555.

The first step requires only a "modest factual showing" that plaintiffs and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." *Id.* (internal quotation marks and citations omitted). The standard of proof is low "because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Id.* (emphasis in original). Participants in a potential collective action need not have held identical jobs or been subject to identical treatment; rather, conditional certification is appropriate where all putative class members are employees of the same enterprise and they allege the same types of FLSA violations. *Lin v. Benihana Nat'l Corp.*, 275 F.R.D. 165, 173 (S.D.N.Y. 2011).

Nonetheless, this "modest factual showing cannot be satisfied simply by unsupported

assertions." *Myers*, 624 F.3d at 555 (internal quotation marks and citation omitted); *see also Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 111-12 (S.D.N.Y. 2015) ("[At the first step, the court does not] resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations. However, the evidence must be sufficient to demonstrate that [current] and potential plaintiffs together were victims of a common policy or plan that violated the law.") (internal quotation marks and citations omitted). Still, for conditional certification purposes, "the Court [should] draw all inferences in favor of the Plaintiff[s]." *Jenkins v. TJX Cos. Inc.*, 853 F. Supp. 2d 317, 322 (E.D.N.Y. 2012).

If a court finds that there are potential opt-in plaintiffs who are "similarly situated," then it has "broad discretion to craft appropriate notices that effectuate the overarching policies of the collective suit provisions and provide employees with accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hernandez v. Immortal Rise, Inc.*, 2012 WL 4369746, at *6 (E.D.N.Y. Sept. 24, 2012) (internal quotation marks and citations omitted). However, "[t]o bring state-law claims on behalf of others against Defendants, Plaintiff[s] must seek class certification pursuant to Rule 23" of the Federal Rules of Civil Procedure. *Feng*, 2016 WL 1070813, at *4 (citation omitted).

At the second stage, the Court will, on a fuller record, determine whether the actual opt-in plaintiffs are in fact "similarly situated" to the named plaintiffs. *Myers*, 624 F.3d at 555. If the record reveals that the opt-in plaintiffs are not, then the Court may decertify the collective action and the opt-in plaintiffs' claims could be dismissed without prejudice. *Id.*

### B.  Overtime

Under both federal and New York State law, employees who work more than 40 hours per week must be compensated for excess hours at a rate of at least one-and-one-half times their regular

hourly wage. *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.110(a); 12 N.Y.C.R.R. § 146-1.4; *see also Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (noting that the NYLL adopts the FLSA definition of overtime); *Valdez v. H & S Rest. Operations, Inc.*, 2016 WL 3079028, at *3 (E.D.N.Y. Mar. 29, 2016), *adopted by*, 2016 WL 3087053 (E.D.N.Y. May 27, 2016) ("New York's Labor Law is the state analogue to the federal FLSA. Although the Labor Law does not require a plaintiff to show either a nexus with interstate commerce or that the employer has any minimum amount of annual sales, it otherwise mirrors the FLSA in compensation provisions regarding overtime wages.") (internal quotation marks omitted).

### C.  Spread of Hours Wages

Under the regulations implementing the NYLL, for any day on which an employee works more than 10 hours, "[the] employee shall receive one hour's pay at the basic minimum hourly wage rate," in addition to the minimum wage required. 12 N.Y.C.R.R. § 142-2.4. Meaning, employees must receive "an extra hour of pay . . . for each day in which the interval between the beginning and end of the workday is longer than ten hours." *Chaohui Tang v. Wing Keung Enters., Inc.*, 210 F. Supp. 3d 376, 389 (E.D.N.Y. 2016); *see also Lewis v. Alert Ambulette Serv. Corp.*, 2012 WL 170049, at *5 (E.D.N.Y. Jan. 19, 2012) ("Spread of hours is defined as the interval between the beginning and end of an employee's workday; it includes working time plus time off for meals plus intervals off duty.") (internal quotation marks omitted).[2]

### D.  Wage Deductions

The NYLL restricts the types of deductions employers may make to employee wages. *See* N.Y.L.L. § 193. Though employers are permitted to make deductions that are "for the benefit of the employee" when the employee expressly authorizes those deductions in writing, such

---

[2] This "spread of hours" requirement only applies to employees who earn minimum wage. *See, e.g.*, *Shu Qin Xu v. Wai Mei Ho*, 111 F. Supp. 3d 274, 281 (E.D.N.Y. 2015).

deductions are limited to payments for "insurance premiums, pension or health and welfare benefits, contributions to a bona fide charitable organization . . . and similar payments for the benefit of the employee." *Id.* at § 193(1)(b). The only other permissible deductions employers may make are those authorized or required by law, such as for social security and income tax. *See* 12 N.Y.C.R.R. § 142-2.10. Thus, "employers are forbidden from making 'deductions for spoilage or breakage; . . . deductions for cash shortages or losses; [or imposing] fines or penalties for lateness, misconduct, or quitting by an employee without notice.'" *Lewis v. Alert Ambulette Serv. Corp.*, 2012 WL 170049, at *5 (E.D.N.Y. Jan. 19, 2012) (quoting 12 N.Y.C.R.R. § 142-2.10(a)). Likewise, employers may not make deductions for "expenses incurred by an employee in carrying out duties assigned by an employer." *Id.* (quoting 12 N.Y.C.R.R. § 142-2.10(b)) (internal quotation marks omitted).

### E.  Wage Notices and Statements

Employers are required to "furnish each employee with a statement with every payment of wages[.]" *See Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 466 (E.D.N.Y. 2015) (quoting N.Y.L.L. § 195(3)) (internal quotation marks omitted). These statements must contain several categories of information, including "the number of overtime hours worked." N.Y.L.L. § 195(3).[3] An employer's failure to furnish these statements results in a civil penalty of $250 per violation, with a maximum penalty of $5,000 per employee. *See* N.Y.L.L. § 198(1-d).

Employers are also obligated to provide annual wage notices to employees. *See Yuquilema v. Manhattan's Hero Corp.*, 2014 WL 4207106, at *10 (S.D.N.Y. Aug. 20, 2014), *adopted by*,

---

[3] The full text of the provision states that "[e]very employer shall . . . furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages." N.Y.L.L. § 195(3).

2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014). These notices must be provided within ten business days after the employee begins employment and then again, annually, every February thereafter. *See id.* The notice must include information about the rate of pay, any allowances claimed by the employer, and the name and principal address of the employer. N.Y.L.L. § 195(1)(a).[4] It must be provided in English or in the primary language of the employee. *Id.* Failure to provide the notice subjects employers to a civil penalty of $50 per day, with a maximum penalty of $5,000 per employee. N.Y.L.L. § 198(1-b).

### F.  FLSA Statute of Limitations and Equitable Tolling

Lawsuits alleging violations of the FLSA must be brought within two years from the date of accrual, except where willful violations are alleged; in that case, the period is extended to three years. *See* 29 U.S.C. § 255(a); *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 191 (E.D.N.Y. 2015). In an FLSA collective action, the statute of limitations continues to run for each potential plaintiff until such time as that plaintiff affirmatively opts in to the lawsuit. *See, e.g., Yahraes v. Rest. Assocs. Events Corp.,* 2011 WL 844963, at *1 (E.D.N.Y. Mar. 8, 2011).

Equitable tolling is granted only "sparingly." *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). However, courts have discretion to equitably toll a statute of limitations "in rare and exceptional circumstances . . . [where] a party is prevented in some extraordinary way from exercising his rights[.]" *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (internal quotation marks and citations omitted). To decide whether equitable tolling is appropriate, courts must consider whether the person seeking to toll the statute has (1) acted with

---

[4]  I recognize that this section of the NYLL has been amended on several occasions. I also recognize that the named Plaintiffs in this case have varying dates of employment, some having worked for Defendants as early as 2013. However, the question of which iteration of NYLL § 195(1) applied to each particular named Plaintiff at specific times during their employment is beyond the scope of the question before me, which is whether Plaintiffs have made a "modest factual showing" that they and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." *Myers*, 624 F.3d at 554-55 (internal quotations marks and citations omitted).

"reasonable diligence" during the time period he or she seeks to have tolled; and (2) proven that

the circumstances at issue are "so extraordinary" that the doctrine should apply. *Id*. at 80-81

(internal citations omitted).

Some courts have held that "the delay caused by the time required for a court to rule on a

motion, such as one for certification of a collective action in a FLSA case, may be deemed an

extraordinary circumstance justifying the application of the equitable tolling doctrine." *See, e.g.*,

*Yahraes,* 2011 WL 844963, at *2 (citing *Abadeer v. Tyson Foods, Inc.,* 2010 WL 5158873, at *2–

*4 (M.D. Tenn. Dec. 14, 2010); *Israel Antonio-Morales v. Bimbo's Best Produce, Inc.,* 2009 WL

1591172, at *1 (E.D. La. Apr. 20, 2009); *Stickle v. Sciwestern Mkt. Support Ctr.,* 2008 WL

4446539, at *22 (D. Ariz. Sept. 30, 2008); *Owens v. Bethlehem Mines Corp.,* 630 F. Supp. 309,

312 (S.D.W.V. 1986)). Other courts have disagreed and found the request, in the context of a

motion to conditionally certify a FLSA collective, to be premature. *See*, *e.g.*, *Mendoza v. Ashiya

Sushi 5, Inc.*, 2013 WL 5211839, at *10 (S.D.N.Y. Sept. 16, 2013) (quoting *Whitehorn v.

Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011)) (deeming it unnecessary

to decide whether to toll the statute of limitations because it was unclear whether any potential

plaintiffs would be barred from the action due to a delay in notice, and thus deferring the tolling

question to be decided after the opt-in period, if potential plaintiffs with expired claims appeared

in the action).

### G.  Proposed Notice of Pendency

As explained above, courts have "broad discretion to craft appropriate notices that

effectuate the overarching policies of [ ] collective suit provisions and provide employees with

accurate and timely notice concerning the pendency of [a] collective action[.]" *Hernandez v.

Immortal Rise, Inc.*, 2012 WL 4369746, at *6 (E.D.N.Y. Sept. 24, 2012) (internal quotation marks

and citations omitted); *see also Enriquez v. Cherry Hill Mkt. Corp.*, 2012 WL 440691, at *2 (E.D.N.Y. Feb. 10, 2012) (quoting *Gjurovich v. Emmanuels Marketplace, Inc.,* 282 F. Supp. 2d 101, 106 (S.D.N.Y. 2003)) (noting that the particular details of the notice are "left to the broad discretion of the trial court") (internal quotation marks omitted). Courts considering proposed notices may be guided by the "goal" of the notice, which is to "make as many potential plaintiffs as possible aware of th[e] action and their right to opt in without devolving into a fishing expedition or imposing undue burdens on the defendants." *Enriquez*, 2012 WL 440691, at *2.

### H.  Production of Contact Information of Potential Collective Members

The purpose of producing the names and contact information of potential opt-in plaintiffs is to facilitate notice to those potential plaintiffs. *See Brabham v. Mega Tempering & Glass Corp.*, 2013 WL 3357722, at *8 (E.D.N.Y. July 3, 2013). Thus, "[i]n general, it is appropriate for courts in collective actions to order the discovery of names, addresses, telephone numbers, email addresses, and dates of employment of potential collective members." *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 74-75 (E.D.N.Y. 2016) (internal quotation marks and citations omitted); *see also Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95, 102 (E.D.N.Y. 2014) ("In regard to requests for names, last known addresses, telephone numbers (both home and mobile), e-mail addresses, and dates of employment, courts often grant this kind of request in connection with a conditional certification of an FLSA collective action.") (internal quotation marks and citations omitted); *see also Cherif v. Sameday Delivery Corp.*, 2015 WL 5772012, at *6 (E.D.N.Y. Sept. 30, 2015); *Fa Ting Wang v. Empire State Auto Corp.*, 2015 WL 4603117, at *14-15 (E.D.N.Y. June 29, 2015). However, courts are reluctant to authorize disclosure of private information, such as "dates of birth and social security numbers[,]" unless the party seeking the information can show that the information is necessary to facilitate notice to potential opt-in plaintiffs. *See Valerio*, 314 F.R.D.

at 75 (collecting cases). Where plaintiffs cannot show a "particularized need" for this private information, courts generally do not order that it be produced. *See*, *e.g.*, *Jie Zhang v. Wen Mei, Inc.*, 2015 WL 6442545, at *7 (E.D.N.Y. Oct. 23, 2015).

## III.    ANALYSIS

Plaintiffs seek to form a collective composed of current and former To-Rise employees. *See* Dkt. No. 35-8 (the "Proposed Notice" or "Prop. Notice"). According to the Proposed Notice, any employee who worked at To-Rise since June 29, 2010 would be permitted to join the collective action. *See id.* Plaintiffs' collective action claims are to recover overtime compensation and liquidated damages. *See* Am. Complaint at ¶ 80.

### A.  Conditional Certification

As discussed above, the instant motion concerns only the first step in the process of certification as an FLSA action. At this stage, Plaintiffs' burden is "minimal," and they need only make a "modest factual showing sufficient to demonstrate that [they] and potential [opt-in] plaintiffs together were victims of a common policy or plan that violated the law." *Feng v. Soy Sauce LLC*, 2016 WL 1070813, at *2 (E.D.N.Y. Mar. 14, 2016) (internal quotation marks and citations omitted). "At this conditional certification stage, the focus of the inquiry is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." *Bijoux v. Amerigroup N.Y., LLC*, 2015 WL 4505835, at *5 (E.D.N.Y. July 23, 2015) (internal quotation marks and citations omitted), *adopted by*, 2015 WL 5444944 (E.D.N.Y. Sept. 15, 2015).

Defendants concede that "courts do not look to the merits [of a claim] for conditional certification purposes." Opp. to Motion for Cert. at 1. In fact, as noted by Plaintiffs, "Defendants do not . . . argue that the members of the collective are not similarly situated, they do not argue

that notice should not be given, nor do they argue the sufficiency of the pattern and practice alleged." Dkt. No. 37 ("Reply I.S.O. Motion for Cert.") at 1. Instead, Defendants argue that "[c]ertification cannot proceed" because Plaintiffs and Plaintiffs' counsel "cannot adequately represent the interests of other potential opt in members[.]" *See* Opp. to Motion for Cert. at 3-4.

The question before me is whether Plaintiffs have made the requisite modest factual showing to warrant conditional certification. Thus, I will first address whether Plaintiffs have met that burden, and then address Defendants' arguments about conflicts.

### 1. Unlawful Policy

Plaintiffs contend that Defendants maintained a "corporate policy or practice of limiting the amount of overtime reported and compensated." Motion for Cert. at 4. In support of their assertion, Plaintiffs attach declarations from Ms. Lora, Mr. Moscoso, Mr. Mendoza, Mr. Mitrano, and Mr. Marin. *See* Lora Decl.; Moscoso Decl.; Mendoza Decl.; Mitrano Decl.; Marin Decl. In these declarations, Plaintiffs contend that they routinely worked more than forty hours per week without receiving proper overtime compensation, *see* Lora Decl. at ¶¶ 6, 11; Moscoso Decl. at ¶¶ 4, 8, 10; Mendoza Decl. ¶¶ 4-10; Mitrano Decl. at ¶¶ 7-10; Marin Decl. at ¶¶ 6-9, that Defendants made unlawful deductions to Drivers' wages for traffic violations, *see* Lora Decl. at ¶ 5; Mendoza Decl. at ¶ 12; Mitrano Decl. at ¶ 12; Marin Decl. at ¶ 11, that when they worked more than ten hours per day, they were not paid spread of hours wages, *see* Mendoza Decl. at ¶ 20; Mitrano Decl. at ¶ 11; Marin Decl. at ¶ 10, and that they did not receive required wage notices and statements. *See* Lora Decl. at ¶¶ 12-13, Moscoso Decl. at ¶¶ 12-13; Mendoza Decl. at ¶¶ 22-23; Mitrano Decl. at 13, 15; Marin Decl. at ¶¶ 12-13.[5]

---

[5] Plaintiffs assert that Drivers, along with some other employees of To-Rise, were paid on a *per diem* basis. *See* Motion for Cert. at 5; *see also* Lora Decl. at ¶ 5; Moscoso Decl. at ¶ 5; Mendoza Decl. at ¶¶ 4-7, 11; Mitrano Decl. at ¶ 10; Marin Decl. at ¶ 8. Plaintiffs cite no particular provision of the FLSA to suggest that they are asserting this as an independent violation, nor do they state a separate cause of action on this basis. Consequently, I will treat this *per*

Plaintiffs state that based on their observations, other employees of To-Rise worked more than forty hours per week without proper overtime compensation and also received improper deductions to their wages. *See* Lora Decl. at ¶¶ 5, 7; Moscoso Decl. at ¶¶ 8-9; Mendoza Decl. at ¶¶ 16, 19, 21; Mitrano Decl. at ¶¶ 12, 16; Marin Decl. at ¶¶ 9, 11. In particular, Ms. Lora, an Office Worker who states that her job duties included entering data into the payroll system and printing payroll reports, asserts that Mr. Salcedo instructed her to reduce the hours of all To-Rise employees in order to "reduce payroll costs." Lora Decl. at ¶¶ 4-5. She asserts that, at Mr. Salcedo's instruction, she reduced the hours of Drivers, Drivers' Helpers, Warehouse Workers, and Office Workers. *Id.* at ¶ 5. She also asserts that Mr. Salcedo instructed her to reduce the hours of Drivers "to make up for traffic tickets they received, for missing merchandise, for missing money, and for damage to company vehicles." *Id.* Mr. Moscoso, another former Office Worker, states that "[b]ased on [his] observations and conversations with other office employees, [Mr.] Salcedo would manipulate the payroll system in order to pay everyone for fewer hours than they actually worked." Moscoso Decl. at ¶ 8.

As stated above, Defendants deny "most, if not all" of Plaintiffs' factual allegations. Opp. to Motion for Cert. at 1. However, they acknowledge that courts need not look to the merits for conditional certification purposes. *Id.* Thus, Defendants do not argue that Plaintiffs have failed to make the requisite "modest factual showing" that they and potential opt-in plaintiffs were victims of a policy that violated the law. *See generally id.*; *see also* Reply I.S.O. Motion for Cert. at 1.

Here, the Court finds that Plaintiffs have sufficiently alleged, for purposes of conditional certification only, that they were the victims of an unlawful policy whereby Defendants violated the FLSA by reducing employees' hours, failing to compensate them at the required overtime rate,

---

*diem* argument as further support for the contention that Defendants failed to record and compensate Plaintiffs for hours worked in excess of forty per week, and failed to pay Plaintiffs spread of hours wages.

and making inappropriate deductions to Drivers' wages. The Court now turns to the more central question of whether the named Plaintiffs and potential opt-in plaintiffs are "similarly situated" with regard to this policy. *See Bijoux v. Amerigroup N.Y., LLC*, 2015 WL 4505835, at *5 (E.D.N.Y. July 23, 2015) (whether an unlawful policy or practice exists "takes a back seat to the paramount issue of whether the plaintiffs are similarly situated as to their allegations concerning the allegedly unlawful practices").

## 2. <u>Similarly Situated</u>

The "similarly situated" requirement imposes only "a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (emphasis in original). To ascertain whether plaintiffs are similarly situated, district courts typically examine whether "[plaintiffs] and other employees have similar positions, job requirements, pay provisions, and the like; there must be an identifiable factual nexus which binds [plaintiffs] and potential class members together as victims of a particular practice." *Juarez v. 449 Restaurant, Inc.*, 29 F. Supp. 3d 363, 369 (S.D.N.Y. 2014) (internal quotation marks and citations omitted); *see also Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 66 (E.D.N.Y. 2016) ("At the initial certification stage, courts do not require proof of an actual FLSA violation, but rather that a 'factual nexus' exists between the plaintiff's situation and the situation of other potential plaintiffs.") (quoting *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007)) (internal quotation marks excluded). The evidentiary standard is lenient, such that "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan is required." *See Zaldivar v. JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 317 (E.D.N.Y. 2016) (quoting *Sexton v. Franklin First Fin., Ltd.*, 2009 WL 1706535, at *3 (E.D.N.Y. June 16, 2009)) (internal quotation marks omitted).

Plaintiffs' proposed collective comprises all former and current non-exempt employees of To-Rise since June 29, 2010. *See* Prop. Notice; Motion for Cert. at 4. Setting aside the scope of the time period, which is discussed in greater detail below, this Court finds that, for the purposes of conditional certification, the allegations set forth in Plaintiffs' declarations, in conjunction with the allegations in the Amended Complaint, establish the required "factual nexus." Ms. Lora's allegation that Mr. Salcedo instructed her to reduce the hours of other employees and make illegal deductions to the wages of Drivers, together with the allegations made by Mr. Moscoso, Mr. Mendoza, Mr. Mitrano, and Mr. Marin–that based on their own observations, other employees worked more than forty hours per week without overtime compensation and had unlawful deductions taken from their wages–establish a sufficient factual nexus between Plaintiffs' situation and that of other, non-exempt employees. I therefore find that other, non-exempt employees of To-Rise are similarly situated to the named Plaintiffs.

If, at the close of discovery, it appears that any Plaintiffs who have opted-in are not in fact similarly situated, then Defendants will have the opportunity to move for de-certification at that time. *See Valerio*, 314 F.R.D. at 69 (citing *Myers*, 624 F.3d at 555). The Court now turns to Defendants' primary objection to conditional certification, which is that Plaintiffs are unable to represent the collective due to a conflict of interest. *See* Opp. to Motion for Cert. at 1-5.

### 3. <u>Conflicts of Interest</u>

Defendants have filed four counterclaims against the named Plaintiffs. *See generally* Ans. to Am. Complaint at 19-25, ¶¶ 1-52. They have alleged that: (1) all named Plaintiffs breached the duty of loyalty and violated the faithless servant doctrine, *see id*. at 22-23, ¶¶ 30-36; (2) Mr. Garcia, Mr. Mendoza, Mr. Moscoso, and Ms. Lora committed conversion, *see id*. at 23-24, ¶¶ 37-42; (3) all named Plaintiffs conspired to commit conversion, *see id.* at 24, ¶¶ 43-47; and (4) all named

Plaintiffs breached fiduciary duties owed to the Defendants. *See id*. at 25, ¶¶ 48-52. In their Opposition to the Motion for Certification, Defendants argue that these counterclaims expose Plaintiffs to "significant liability" and the possibility that Plaintiffs may be "unable to recover wages." *See* Opp. to Motion for Cert. at 3. Therefore, they assert, Plaintiffs' "litigation strategy and financial interests . . . are vastly different than the interests of potential opt-in members." *Id*. at 5. If Plaintiffs represent the collective, Defendants argue, they will have "much different litigation and financial motives" from potential opt-in plaintiffs, and those motives will "undoubtedly disadvantage and disenfranchise all potential opt-in members." *Id*. at 2. Thus, Defendants conclude, Plaintiffs have a "clear conflict of interest with potential opt-in members[,]" and certification "cannot proceed[.]" *See id*. at 1, 4.

In support of this argument, Defendants cite three cases, all from outside this District. *See id*. at 4 (citing *Wright v. Family Dollar, Inc.*, 2010 WL 4962838 (N.D. Ill. Nov. 30, 2010); *Mateo v. V.F. Corp.*, 2009 U.S. Dist. LEXIS 105921 (N.D. Cal. Oct. 27, 2009); *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309 (M.D. Ala. 2002)). They argue that "where there exists any conflict between the named plaintiff and the potential opt-ins[,] . . . certification must be denied." *Id*. (citing *Wright*, 2010 WL 4962838, at *2-3; *Mateo*, 2009 U.S. Dist. LEXIS 105921, at *13).

In response, Plaintiffs assert that: (1) the counterclaims will ultimately be dismissed; (2) the counterclaims contain no specific allegations against Mr. Mitrano or Mr. Manco, and no arguments have been made about why they are not suitable representatives of the collective; (3) Defendants may attempt to demonstrate that a conflict exists *after* discovery has been completed; and (4) the authority cited by Defendants for their position is "[not] on point." *See* Reply I.S.O. Motion for Cert. at 1-2.

Regarding the authority cited by Defendants, I agree with Plaintiffs. These cases are

inapposite. Defendants cite *White* for the proposition that "[c]ourts have denied collective certification in circumstances where the named plaintiffs have a conflict of interest with potential opt-in members." *See* Opp. to Motion for Cert. at 4 (citing *White*, 204 F. Supp. 2d. at 1314-15). However, in *White*, the court did not deny collective certification. *See White*, 204 F. Supp. 2d. at 1318. Instead, it found that a particular group of employees that the named plaintiff sought to include in the certified collective were *not* similarly situated to the named plaintiff, and thus would not be included, though a collective would be certified nonetheless. *See id*. at 1314-15.[6] Furthermore, although the *White* court held that one group of employees–foremen–could not represent another group of employees–crewmen–based on the fact that the former had supervised the latter and could therefore face individual liability for FLSA claims by crewmen, *see id*., that type of conflict is distinguishable from the alleged conflict in the instant case. In *White*, the potential opt-in plaintiffs could theoretically have sought recovery from the named plaintiffs; that is inherently different from a case in which the named Plaintiffs could be found liable to the Defendants for counterclaims, as in the case at bar.

Likewise, neither *Mateo* nor *Wright* is instructive. Defendants argue that these cases support the contention that where "any" conflict of interest exists between a named plaintiff and a potential opt-in plaintiff, collectives may not be conditionally certified. *See* Opp. to Motion for Cert. at 4. However, neither case supports that proposition. The *Mateo* court was considering a motion for class certification under Federal Rule of Civil Procedure 23, not conditional certification under 29 U.S.C. § 216(b). *See Mateo*, 2009 U.S. Dist. LEXIS 105921, at *5-8 (citing Fed. R. Civ. P. 23). It consequently held plaintiffs in the case to the Rule 23 standards of numerosity, commonality, typicality, and adequacy of representation. *See id*. at *8-14. Similarly,

---

[6] The *White* court also found that the collective should not be extended to cover employees who had worked outside of Alabama, *White*, 204 F. Supp. 2d. at 1318, but that holding has no apparent relevance to the instant motion.

17

in *Wright*, the court was considering whether plaintiffs had established typicality and adequacy of representation under Rule 23; conditional certification was not at issue. *See Wright*, 2010 WL 4962838, at *2. Courts have routinely held that Section 216(b)'s "similarly situated" requirement is "considerably less stringent" than the requirements for class certification under Federal Rule of Civil Procedure 23, and "that a party seeking to maintain a collective action need not meet the requirements of Rule 23 for class certification." *See Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 65 (E.D.N.Y. 2016) (quoting *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 481 (E.D.N.Y. 2001)) (internal quotation marks omitted). As such, I see no reason why Rule 23 analysis, as applied in cases outside this District, has any significant bearing on the instant motion.

Defendants have not cited and this Court has not found any case holding that counterclaims against proposed representatives of a FLSA collective create an inherent conflict between named plaintiffs and potential opt-in plaintiffs, such that conditional certification of a collective is precluded. *But cf. Goers v. L.A. Entm't Grp., Inc.*, 2016 U.S. Dist. LEXIS 114092, at *24-25 (M.D. Fla. July 8, 2016) (mentioning counterclaims raised by defendants in the context of analyzing adequacy under Rule 23, but declining to find a conflict between the representative plaintiffs and the proposed class). This is not surprising, given that such precedent would suggest that Defendants in any FLSA action could prevent conditional certification of a collective by filing counterclaims against the named Plaintiffs and then arguing that the counterclaims present a conflict of interest.

As explained above, conditional certification is a two-step process. At the second stage, the Court determines whether plaintiffs who have opted-in to the case are in fact "similarly situated" to the named Plaintiffs. *See Myers*, 624 F.3d at 555. Arguments about conflicts of interest would be better raised during that second stage, or, if Plaintiffs opt to seek class certification under

Rule 23, at that time. I find that at this point in the litigation, the alleged conflict of interest should not preclude conditional certification.

### B. Equitable Tolling

Plaintiffs request that the statute of limitations be tolled until they are able to send notices to the potential opt-in plaintiffs, in order to "avoid inequitable circumstances[.]" *See* Motion for Cert. at 15-16. Defendants make no argument regarding Plaintiffs' request, though they assert that Plaintiffs' motion should be denied "in its entirety." *See* Opp. to Motion for Cert. at 2.

As previously explained, courts do not uniformly grant or deny requests for equitable tolling in the context of a motion for conditional certification. *Compare Yahraes v. Rest. Associates Events Corp.,* 2011 WL 844963, at *3 (E.D.N.Y. Mar. 8, 2011) (tolling the statute), *with Mendoza v. Ashiya Sushi 5, Inc.*, 2013 WL 5211839, at *10 (S.D.N.Y. Sept. 16, 2013) (finding the tolling request to be premature). And often, courts granting equitable tolling in this context do so "only when events external to consideration of the motion itself contributed to delay." *Mendoza*, 2013 WL 5211839, at *10 (collecting cases and noting, *inter alia*, that the *Yahraes* court granted equitable tolling when "defendants' litigation strategy had frustrated plaintiffs' efforts to pursue their claims") (citing *Yahraes*, 2011 WL 844963, at *3).

At this stage, it is not yet clear whether any potential opt-in plaintiffs will be barred from the instant action due to delayed notice. *See generally Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011). Furthermore, Plaintiffs have not argued that factors external to the motion have contributed to delay. *See* Motion for Cert. at 15-16. Consequently, I respectfully recommend that Plaintiffs' request for equitable tolling be denied, and that consideration of the statute of limitations be deferred until after the opt-in period, when "individual

would-be plaintiffs whose claims have expired may seek equitable tolling as it may apply to them."

*Mendoza*, 2013 WL 5211839, at *10.

### C. Proposed Notice

#### 1. <u>Notice Period</u>

In the Proposed Notice, Plaintiffs seek to include all employees who worked at To-Rise at any time "within the last six years[.]" *See* Prop. Notice. The Proposed Notice states that employees are "eligible to make a state claim if [they] worked for either of [sic] the company at any time since June 29, 2010, and [they] are eligible to make a federal claim if [they] worked for the company at any time since June 29, 2013." *Id.*

As explained above, the statute of limitations for an FLSA claim is either two years or three years in the event of a willful violation. *See* 29 U.S.C. § 255(a); *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 191 (E.D.N.Y. 2015). Plaintiffs allege willful violations in the Amended Complaint. *See* Am. Complaint at ¶ 85. There is no reason why a three-year period should not apply here. *See, e.g.*, *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 73-74 (E.D.N.Y. 2016) ("At the conditional certification stage, allegations of willful conduct are sufficient to apply the three-year statute of limitations for purposes of certifying the class.") (internal quotation marks and citations omitted).

Plaintiffs also allege state law claims with longer limitations periods. *See generally* Am. Complaint at ¶¶ 9, 93. There is a split of authority concerning these situations, but courts in this District have previously held that only a three-year limitations period should be applied to the notice period:

> [T]he longest applicable limitations period to plaintiffs' FLSA claim is three years
> if willful violations are established. Thus, any potential plaintiff whose claim is
> more than three years old has a state law claim only. In the absence of diversity and
> a claim for damages in excess of $75,000 (which seems unlikely), the Court would

20

have no subject matter jurisdiction over claims that are more than three years old
since such claims would be pure state law claims. There is no reason to provide an
opt-in notice to a plaintiff whose claims could not be asserted in this Court.

*Hanchard-James v. Brookdale Family Care Ctrs.*, 2012 WL 3288810, at *4 (E.D.N.Y. Aug. 9,

2012) (quoting *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 364 (E.D.N.Y. 2007)) (internal

citations omitted).

A three-year notice period should apply in this case. To avoid causing inefficiency by

providing notice to potential opt-in plaintiffs with claims that may turn out to be time-barred or

confusing employees about disparate claims with different statutes of limitation, it makes sense to

limit notification to employees during the three-year period before the filing of the instant action.

*See Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 564 (S.D.N.Y. 2013); *Perez v.

De Domenico Pizza & Restaurant, Inc.*, 204 F. Supp. 3d 494, 496 (E.D.N.Y. 2016) ("In the absence

of direction from the Second Circuit, the Court finds the reasoning supporting the use of the three-

year notice period to be more persuasive [than that of the six-year notice period]. . . . As to potential

plaintiffs who are time-barred from relief under the FLSA, there is no purpose in sending such

employees a notice informing them that (1) there is a pending opt-in lawsuit, (2) they may not opt

in, and (3) they may later receive another notice should their status change due to [Rule 23] class

certification.") (internal quotation marks and citations omitted); *McBeth v. Gabrielli Truck Sales,

Ltd.*, 768 F. Supp. 2d 396, 400 (E.D.N.Y. 2011) ("With respect to extending the notice period to

six years, while [n]otice to all former employees, going back six years, has been authorized where

plaintiffs seek relief under both the FLSA and the [NYLL], . . . the growing trend in this district

appears to be limiting the notice period to three years.") (internal quotation marks and citations

omitted).

Typically, the notice period is measured "from the date of the Court's order granting

plaintiffs' motion for conditional certification, not from the filing of the complaint." *Hernandez v. Immortal Rise, Inc.*, 2012 WL 4369746, at *7 (E.D.N.Y. Sept. 24, 2012) (citations omitted); *see also Ritz v. Mike Rory Corp.*, 2013 WL 1799974, at *3 (E.D.N.Y. Apr. 30, 2013). When there are no extraordinary circumstances that could implicate equitable tolling, this approach is usually applied. *See Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 356-57 (E.D.N.Y. 2012).

However, a number of cases in this Circuit have found that at the conditional certification stage, the Court should err on the side of caution and set the time for notice using the date of the filing of the lawsuit. *E.g.*, *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 74 (E.D.N.Y. 2016) ("[B]ecause equitable tolling issues often arise as to individual opt-in plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date.") (internal quotation marks and citations omitted); *Wang v. Empire State Auto Corp.*, 2015 WL 4603117, at *13 (E.D.N.Y. June 29, 2015) (setting notice period based on "the remedial purposes of the FLSA [being] best served by setting the time for both discovery and notice using the date of the filing of the Complaint[,]" without delving into the "future argument" of equitable tolling), *adopted by*, 2015 WL 4603117 (E.D.N.Y. July 29, 2015). Such an approach makes sense here, where equitable tolling issues are not yet ripe for the Court to address in any meaningful way. Accordingly, the Notice of Pendency should be directed to those potential opt-in plaintiffs who, at any time between June 29, 2013 and the date of the Order conditionally certifying the collective action, worked as a Driver, Drivers' Helper, Warehouse Worker, or Office Worker at To-Rise. Language in the Proposed Notice should be revised accordingly. Any timeliness issues should be decided if and when they arise.

### 2. <u>Content of Notice</u>

Defendants make a number of objections to the Proposed Notice. Defendants contend that: (1) the notice should contain a statement about Defendants' position on the claims; (2) the notice should disclose that the court has not opined on the merits of the lawsuit; (3) the consent to join form should not be printed on colored paper; (4) the notice should disclose the responsibilities of opt-in plaintiffs if they decide to join the suit; (5) the notice should disclose Plaintiffs' counsel's fee arrangement; (6) the notice should not read as an advertisement; and (7) Defendants should be given an opportunity to review and confirm the accuracy of the Spanish-translated version of the notice. *See* Opp. to Motion for Cert. at 7-9. The Court will address each of these objections in turn.

#### a. *Inclusion of Defendants' Position and Position of the Court*

As drafted, the original Proposed Notice contained no statement about the Defendants' position on the allegations. *See* Prop. Notice. Defendants argue that they should be permitted to set forth their position, lest it appear that they do not contest the allegations. *See* Opp. to Motion for Cert. at 7. Thus, they argue that the following language should be added to the notice:

> Defendants deny the allegations that [sic] Plaintiffs that they were improperly paid. Specifically, Defendants contend that plaintiffs and all employees receiving this notice were paid proper wages at all relevant times.
>
> Defendants have filed four (4) counterclaims against plaintiffs which relate to allegations that its former employees stole confidential information and documents from To-Rise, LLC. These counterclaims are for breach of duty of loyalty, breach of fiduciary duty, conversion, and conspiracy to commit conversion. If proven, the counterclaims could result in Plaintiffs owing Defendants for wages paid to them, bar its former employees from recovering wages and result in liability for other damages suffered by To-Rise, LLC. There may be a conflict of interest between you and the named Plaintiffs who will represent you and make decisions for you in this case.
>
> By joining this lawsuit, you designate the class representatives as your agents to make decisions on your behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel

concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. The decisions and agreements made and entered into by the representative Plaintiff will be binding on you if you join this lawsuit.

*See Id.* at 7-8.

The Proposed Notice also contains no statement or disclaimer regarding the Court's view of the claims. *See* Prop. Notice. Defendants argue that in its current format, the Proposed Notice may lead individuals to believe that the Court has endorsed Plaintiffs' claims. *See* Opp. to Motion for Cert. at 8. Defendants therefore propose that the following language be added to the notice:

> No determination has been made as to whether you are owed any regular wages or overtime or not, and the Court is not endorsing the merits of the lawsuit or advising you to participate in the lawsuit.

*See id.*

Plaintiffs have agreed to modify the Proposed Notice to include some language regarding the Defendants' position and the position of the Court. *See* Reply I.S.O. Motion for Cert. at 4. In an amended version of the Proposed Notice submitted with Plaintiffs' Reply Memorandum, Plaintiffs suggest the following language:

> The Defendants deny all these allegations, and the Court has not yet decided whether the allegations are correct or not.

*See* Dkt. No. 37-1 ("Exhibit 1 to Reply I.S.O. Motion for Cert."). However, Plaintiffs object to Defendants' suggestion that the counterclaims should be mentioned in the notice. *See* Reply I.S.O. Motion for Cert. at 4.  They argue that Defendants' proposed language is a "thinly veiled threat that all opt-in plaintiffs will be sued as well." *Id.*

Courts routinely hold that notices of pendency must include a summary describing the position of the employers in the case. *See*, *e.g.*, *Viriri v. White Plains Hosp. Med. Ctr.*, 2017 WL 2473252, at *9 (S.D.N.Y. June 8, 2017) (holding that potential opt-in plaintiffs should be advised that defendant employer had asserted compliance with the FLSA); *Martin v. Sprint/United Mgmt.*

24

*Co.*, 2016 WL 30334, at *17 (S.D.N.Y. Jan. 4, 2016) (ordering plaintiffs to add "a more fulsome statement of defendants' positions and defense" to the notice of pendency). Likewise, courts have found that "language regarding the absence of any adjudication on the merits is appropriate[ly included in a notice of pendency.]" *See*, *e.g.*, *Viriri*, 2017 WL 2473252, at *9. Thus, some statement describing Defendants' position and the lack of adjudication on the merits must be included in this notice.

However, Defendants' proposed language is inappropriate. In particular, I agree with Plaintiffs that the language regarding counterclaims may be perceived by potential opt-in plaintiffs as a threat. The statement appears to be an attempt to dissuade potential plaintiffs from joining the suit by suggesting that if they join, they may also be sued by Defendants. That type of language is impermissible. *See Viriri*, 2017 WL 2473252, at *9 (rejecting language proposed by defendant describing defendant's position in the lawsuit because the proposed language made "subtle but obvious efforts to dissuade the opt-in plaintiffs from joining" the case).

Nonetheless, precedent in this District suggests that Defendants' should be permitted to include some statement on their position regarding certification of the collective. *See Enriquez v. Cherry Hill Mkt. Corp.*, 2012 WL 440691, at *4 (E.D.N.Y. Feb. 10, 2012) (ordering that "[a] statement that the defendants dispute that [the named plaintiff] should be allowed to represent other employees and intend to contest the addition of any claims of other employees" be included in a notice of pendency). As such, I respectfully recommend that the following language be added to the notice:

> The Defendants deny all claims against them and maintain that they have complied with the FLSA. The Defendants also dispute that the named Plaintiffs in this lawsuit should be permitted to represent other employees. The Court has not yet made any determination as to the merits of the claims or your right to recover any sum of money from Defendants.

*See generally Viriri*, 2017 WL 2473252, at *9 (ordering that the following language be added to a notice of pendency: "Defendant denies all claims against it and maintains that it has complied with the FLSA . . . . The Court has not yet made any determination as to the merits of the claims or your right to recover any sum of money from Defendant"). This language should appear on the first page of the notice, following the case name, as proposed by Plaintiffs. *See* Exhibit 1 to Reply I.S.O. Motion for Cert.

### b.  Color of Notice Paper

The Proposed Notice, as drafted, instructs opt-in plaintiffs that to join the lawsuit, they should fill out and mail "the enclosed blue form" to Plaintiffs' counsel. *See* Prop. Notice. Defendants argue that the consent to join form should not be printed on colored paper, because "printing the [form] on such paper gives it the appearance of an advertisement." Opp. to Motion for Cert. at 8. Plaintiffs counter that "the paper is blue to facilitate identification of which sheet needs to be returned." *See* Reply I.S.O. Motion for Cert. at 4.

The parties have not cited, nor has this Court found, any case in this Circuit discussing the appropriate paper color for consent to join forms. Nonetheless, I find Defendants' argument on this point–that the use of blue colored paper gives the impression that the form is an advertisement– unconvincing. Plaintiffs' explanation for the use of blue paper makes sense. As such, I respectfully recommend that Plaintiffs be permitted to print the consent to join form on blue paper.

### c.  Disclosure of Responsibilities

Defendants argue that the notice should contain a statement notifying potential opt-in plaintiffs of what their discovery obligations will be if they decide to join the lawsuit. *See* Opp. to Motion for Cert. at 8. They propose that the following language be added to the notice:

> If you decide to join this lawsuit, you may be required to respond to certain discover [sic] requests from Defendants such as interrogatories (written questions) and

26

> documents [sic] requests. In addition, you may be required to sit for a deposition
> for questioning by Defendants' attorneys under oath and to testify at trial.

*Id*. Plaintiffs' response to this demand is that opt-in plaintiffs can always decide to opt-out of the case at a later date if they find discovery too burdensome. *See* Reply I.S.O. Motion for Cert. at 5. They argue that "[n]o legitimate purpose is served by encumbering the notice with unnecessary dissuasive warnings." *Id*.

Courts within this District disagree about whether this type of statement should be included in notices of pendency. *Compare Feng v. Soy Sauce LLC*, 2016 WL 1070813, at *6 (E.D.N.Y. Mar. 14, 2016) (approving the following language in a notice of pendency: "[a]s a result of participating in [the FLSA] portion of this lawsuit, [individuals] may be required to provide written responses to questions asked by Defendants, provide evidence to support [their] claims, and testify at a deposition or at trial") *and Lujan v. Cabana Mgmt., Inc.*, 2011 WL 317984, at *11 (E.D.N.Y. Feb. 1, 2011) (finding it appropriate to include "a neutral and non-technical reference to discovery obligations [in the notice of pendency], to insure that opt-in plaintiffs understand that their participation [will] entail greater obligations than participation in some Rule 23 class actions"), *with Enriquez v. Cherry Hill Mkt. Corp.*, 2012 WL 440691, at *3 (E.D.N.Y. Feb. 10, 2012) (finding that language in the notice of pendency that would notify potential plaintiffs about their obligations to participate in discovery and testify at trial "may unduly discourage potential plaintiffs from opting in"); *see also Viriri v. White Plains Hosp. Med. Ctr.*, 2017 WL 2473252, at *9-10 (S.D.N.Y. June 8, 2017) (rejecting argument from defendants that notice of pendency should include statement that opt-in plaintiffs may need to respond to interrogatories, produce documents and information, appear at a deposition, and otherwise participate in discovery, and instead permitting notice with the following language: "[a] small percentage of you may be subject to having to respond to discovery requests of the Defendants and possibly be required to provide testimony").

In light of this disagreement, I respectfully recommend that a statement about opt-in plaintiffs' discovery obligations be included in the notice, but in a different format than that proposed by Defendants in order to minimize its possible dissuasive effects. I recommend the following language:

> As a result of joining this lawsuit, you may or may not be required to participate in discovery. Participation could entail responding to written questions, producing documents, appearing for a deposition, or testifying at trial. If you choose to join this lawsuit, you will be bound by any ruling, settlement, or judgment entered in this case, whether favorable or unfavorable.

*See generally Hernandez v. Immortal Rise, Inc.*, 2012 WL 4369746, at *8 (E.D.N.Y. Sept. 24, 2012) (finding it reasonable to include the following language in the notice of pendency: "[i]f you choose to join this lawsuit, you will be bound by any ruling, settlement, or judgment entered in this case, whether favorable or unfavorable"). This language should appear immediately after the language describing that the court has not reached a decision on the merits of this case.

### d. Disclosure of Plaintiffs' Counsel's Fee Arrangement

Defendants next argue that Plaintiffs' counsel's fee arrangement should be disclosed in the notice. *See* Opp. to Motion for Cert. at 8. Defendants argue that without this information, potential opt-in plaintiffs will lack "necessary and important information" that could inform their decision about whether to permit Plaintiffs' counsel to represent them. *See id.* at 8-9. In response, Plaintiffs assert that "there is absolutely no authority" in existence that requires disclosure of the attorneys' fee arrangement in the notice. *See* Reply I.S.O. Motion for Cert. at 5. They suggest that since it is "almost the universal practice that plaintiff's wage and hour litigation is done, as here, on a one third contingency[,]" no statement about attorneys' fees need be included in the notice. *See id.*

Plaintiffs are incorrect on this point. In this Circuit, it is not unusual for statements about attorneys' fees to be included in notices of pendency. *See, e.g.*, *Hanchard-James v. Brookdale Family Care Centers*, 2012 WL 3288810, at *7 (E.D.N.Y. Aug. 9, 2012) (finding that proposed

notice language was adequate because, *inter alia*, it clearly informed potential plaintiffs of class counsel's contingency fee); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 324 (S.D.N.Y. 2007) (finding that because fee structure could impact recovery by opt-in plaintiffs, a description of the fee structure should be provided in the notice of pendency).

Thus, I respectfully recommend that Defendants' request be granted. Plaintiffs should add language reflecting the details of their fee arrangement to the Proposed Notice. Depending on the details of that arrangement, Plaintiffs should use precedent from this Circuit and District to guide their choice of words. *See, e.g.*, *Santana v. Fishlegs, LLC*, 2013 WL 5951438, at *5 n.1 (S.D.N.Y. Nov. 7, 2013) (directing parties to amend the notice of pendency to include language similar to the following: "If you choose to allow [plaintiffs' counsel] to represent you in the lawsuit then you will be subject to the attorneys' fee arrangement that the Class Representatives entered into . . . which provides that [plaintiffs' counsel] is handling this matter on a contingency basis, i.e., that the attorneys' fees and costs will be determined on a percentage basis based on the recovery on behalf of Plaintiff and that Plaintiff will not be responsible for fees and/or costs if there is no recovery for the Plaintiff. The agreement further provides that in the event that the Class Representatives prevail on their claims at the conclusion of the case, [plaintiffs' counsel] will make an application to the Court for fees and costs. The Court has discretion as to the amount of fees to award, and that the fees may be as much as 33 1/3% of any settlement fund or judgment, after the deduction of costs and expenses."); *Shi Yong Li v. 6688 Corp.*, 2013 WL 5420319, at *3 (S.D.N.Y. Sept. 27, 2013) (rejecting the following language as neither neutral nor accurate: "the firm is handling the lawsuit on a 'contingency fee' basis, which means that you do not have to pay any attorneys' fees or expenses for this lawsuit . . . if you want your own attorney to represent you in this lawsuit, however, you will be responsible for paying that attorney's fees and expenses");

*Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 61 (E.D.N.Y. 2011) (noting that the following language was acceptable in a notice of pendency: "[i]f the plaintiffs prevail and there is recovery the Court will decide the amount of fees to be paid to their attorneys [and] . . . may order that attorneys' fees be paid from the money judgment entered in favor of plaintiffs, or that they be paid separately by the defendants, or some combination of the two"). This language should appear at the end of the section titled, "What do I have to do to join the lawsuit?" *See* Prop. Notice.

### e.  *Notice as Advertisement*

Defendants argue that the "large font" and "bold type" on the Proposed Notice make the notice seem like an advertisement. *See* Opp. to Motion for Cert. at 9. They assert that the font on the notice should be "consistently in 12 of [sic] 14 size[,]" and the document itself should resemble "a legal notice from the Court," not an advertisement for Plaintiffs' counsel. *Id*. In response, Plaintiffs point to sample forms of notice from the Federal Judicial Center. *See* Reply I.S.O. Motion for Cert. at 5-6. They argue that the format of their Proposed Notice comports with those samples, and thus need not be modified. *See id*.

Defendants have not cited and this Court has not found any case describing when and in what fashion notices of pendency may impermissibly resemble advertisements. *See* Opp. to Motion for Cert. at 9. The Proposed Notice does not contain images, and it does not use catch-phrases or bright colors. *See* Prop. Notice. It does not even direct potential plaintiffs to Plaintiffs' counsel's website. *See id*. Instead, as noted by Plaintiffs, the Proposed Notice resembles samples from the Federal Judicial Center. *See* Dkt. No. 37-2 (Exhibit 2 to Reply I.S.O. Motion for Cert.); Dkt. No. 37-3 (Exhibit 3 to Reply I.S.O. Motion for Cert.).  Seemingly, Defendants' only basis for arguing that the Proposed Notice looks like an advertisement is the fact that 12-point font is not used uniformly throughout the document. This argument is unconvincing. *See Acevedo v. WorkFit*

*Med. LLC*, 2014 WL 5437022, at *1 (W.D.N.Y. Oct. 24, 2014) (finding that the font size used in a notice of pendency is a minute detail of trivial importance). Consequently, I recommend that Plaintiffs be permitted to use the format and font proposed.

### f. *Spanish Translation*

Plaintiffs request permission to translate and send a Spanish-language version of the final approved notice of pendency. *See* Motion for Cert. at 15. Defendants do not object to the distribution of a Spanish version of the notice. *See* Opp. to Motion for Cert. at 9. However, Defendants request an opportunity to review and confirm the accuracy of the Spanish version of the notice before it is sent. *See id.* Plaintiffs make no objection to Defendants' request in their Reply Brief. *See generally* Reply I.S.O. Motion for Cert. Consequently, I respectfully recommend that Plaintiffs be permitted to distribute a Spanish-translated version of the notice of pendency, but before doing so, Defendants be given the opportunity to verify the accuracy of the translation.

### 3. <u>Length of Opt-in Period</u>

Neither Plaintiffs nor Defendants propose an opt-in period. "Courts in this Circuit routinely restrict the opt-in period to 60 days." *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 465 (E.D.N.Y. 2014) (citations omitted); *see Fa Ting Wang v. Empire State Auto Corp.*, 2015 WL 4603117, at *11-12 (E.D.N.Y. June 29, 2015) (recommending an opt-in period lasting the "standard sixty days"); *Hernandez v. Immortal Rise, Inc.*, 2012 WL 4369746, at *7 (E.D.N.Y. Sept. 24, 2012) (noting that a 60-day period is "common practice under the FLSA"). "Indeed, courts have rejected requests for [90-day] opt-in periods absent special circumstances." *Cohan v. Columbia Sussex Mgmt., LLC*, 2013 WL 8367807, at *12 (E.D.N.Y. Sept. 19, 2013) (citations omitted); *see Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 452 (S.D.N.Y. 2011) ("While some courts have granted up to 90-day opt-in periods, they generally do so where the period is

31

agreed upon between the parties or special circumstances require an extended opt-in period."). As such, I respectfully recommend a 60-day opt-in period.

### 4.  Posting of Notice

Plaintiffs request access to Defendants' place of business, "during regular business hours[,]" to post the approved notice of pendency. Notice of Motion at ¶ 5; *see* Motion for Cert. at 16. Defendants do not address this request in their Opposition to the Motion for Certification. *See generally* Opp. to Motion for Cert. Courts routinely order notice to be posted in employee common areas, even if potential class members have been notified by mail. *See Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011). "Posting the notice is a reasonable means of assuaging the vagaries of notice by mail, and would not unduly burden the defendants." *Fa Ting Wang v. Empire State Auto Corp.*, 2015 WL 4603117, at *17 (E.D.N.Y. July 29, 2015) (internal quotation marks and citations omitted); *see Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 76 (E.D.N.Y. 2016) (ordering notice to be posted and mailed); *Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 118 (S.D.N.Y. 2015) (same). Thus, I respectfully recommend that Plaintiffs' counsel be permitted to post the approved notice of pendency in a common area at Defendants' place of business.

### 5.  Reminder Notice

Plaintiffs request permission to send a reminder notice "mid-way" through the notice period. *See* Motion for Cert. at 15. They propose a single-page reminder notice that instructs potential plaintiffs to contact Plaintiffs' counsel, if necessary, to obtain a copy of the full notice. *See* Dkt. No. 35-10 (the "Proposed Reminder Notice"). The Proposed Reminder Notice also states the following:

> IMPORTANT: Our records indicate that you have not submitted a Consent Form.
> In order to participate in this collective action lawsuit and be eligible to collect

unpaid wages, you must complete a consent form and mail, fax or email it to [Plaintiffs' counsel.]

In order to participate in this lawsuit, your Consent Form must be post-marked or emailed no later than [date to be determined.]

*Id*. Defendants assert that Plaintiffs should not be permitted to send a reminder notice, regardless of its contents or format. *See* Opp. to Motion for Cert. at 9. They argue that courts in this Circuit do not generally permit such notices because the reminder is "unnecessary," and it could be read by potential plaintiffs as encouragement from the Court to join the lawsuit.[7] *See id*. (citing *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340 (E.D.N.Y. 2012)). Plaintiffs counter that *Guzelgurgenli* is distinguishable from the case at bar, and that two other decisions from this District suggest that reminder notices are appropriate. *See* Reply I.S.O. Motion for Cert. at 6-7 (citing Civil Conference Minute Order, *Andrew v. Lakhi General Contractor Inc., et al*., No. 16-CV-2216, Dkt. No. 32 (E.D.N.Y. Jan. 3, 2017); *Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95, 102 (E.D.N.Y. 2014)).

Defendants' citation of *Guzelgurgenli* is reasonable; in that case, the court did deny plaintiffs' request for a reminder notice. *See Guzelgurgenli*, 883 F. Supp. 2d at 357-58. However, Plaintiffs correctly point out that the request in *Guzelgurgenli* was denied without prejudice since the party requesting the notice had failed to address defense counsel's objections to the reminder. *See id*. Moreover, *Guzelgurgenli* has not been uniformly followed. Recent decisions from within this Circuit have found it appropriate to permit plaintiffs to send reminder notices in FLSA cases. *See*, *e.g*., *Sanchez v. Salsa Con Fuego, Inc.*, 2016 U.S. Dist. LEXIS 118315, at *23-24 (S.D.N.Y. Aug. 24, 2016) (finding reminder notice appropriate); *Racey v. Jay-Jay Cabaret, Inc.*, 2016 WL 3020933, at *11 (S.D.N.Y. May 23, 2016) (same); *Lopez v. JVA Indus., Inc.*, 2015 WL 5052575,

---

[7] Defendants also argue that "nowhere in the FLSA regulations is it contemplated that additional notice will be given." Opp. to Motion for Cert. at 9.

at *4 (S.D.N.Y. Aug. 27, 2015) (same); *Maldonado v. Arcadia Bus. Corp.*, 2015 WL 1914933, at *4 (E.D.N.Y. Apr. 27, 2015) (same); *Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95, 102 (E.D.N.Y. 2014) (same); *Chhab v. Darden Restaurants, Inc.*, 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013) (same).

"A reminder notice facilitates the remedial goals of the FLSA by protecting potential class members against their claims being extinguished by the running limitations period." *Mongiove v. Nate's Corp.*, 2016 WL 590460, at *7 (E.D.N.Y. Feb. 11, 2016) (citing *Flood v. Carlson Restaurants Inc.*, 2015 WL 6736118, at *2 (S.D.N.Y. Nov. 3, 2015)). The reminder notice is consistent with the FLSA's objective of notifying potential plaintiffs about the action and their right to participate in it. *See Sultonmurodov v. Mesivita of Long Beach*, 2015 WL 5918415, at *2 (E.D.N.Y. Oct. 9, 2015) (permitting reminder notice to be sent on these grounds). Thus, in furtherance of the "broad remedial purpose" of the FLSA, I respectfully recommend that Plaintiffs be permitted to send a reminder notice in this case. *See Hotaranu v. Star Nissan Inc.*, 2017 WL 1390808, at *6 (E.D.N.Y. Apr. 12, 2017) (permitting reminder notice to be sent on these grounds).

That said, Defendants' raise a valid concern in arguing that the notice could be interpreted as encouragement from the Court to join the lawsuit. *See* Opp. to Motion for Cert. at 9; *see also Agerbrink v. Model Serv. LLC*, 2016 U.S. Dist. LEXIS 12486, at *28-29 (S.D.N.Y. Feb. 2, 2016) (discussing the concern that reminder notices could give the impression of court-sponsored encouragement to opt-in). To remedy that problem, courts in this Circuit have required that the reminder notice include "language indicating that the Court does not encourage or discourage participation in the collective action." *Agerbrink*, 2016 U.S. Dist. LEXIS 12486, at *29. Consequently, I respectfully recommend that Plaintiffs be required to add the following language to the reminder notice:

> The Court has taken no position in this case regarding the merits of the Plaintiffs' claims or of the Defendants' defenses. The Court does not encourage or discourage your participation in this case.

See generally *Hotaranu*, 2017 WL 1390808, at *6 (approving a reminder notice with similar language); *Agerbrink*, 2016 U.S. Dist. LEXIS 12486, at *29 (citing similar language as remedial to the problem that reminder notices could be interpreted as encouragement from the court to join the lawsuit). This language should appear prominently on the reminder notice.

### D.  Production of Contact Information of Potential Collective Members

Plaintiffs seek, in Microsoft Excel format, a list of names, titles, compensation rates, mailing addresses, email addresses, telephone numbers, social security numbers, and dates of employment of all potential opt-in plaintiffs. *See* Notice of Motion at ¶ 4; Motion for Cert. at 12-14. Defendants argue that Plaintiffs are not entitled to the social security numbers, compensation rates, dates of employment, telephone numbers, or email addresses of the potential opt-in members, though they do not contest Plaintiffs' request for names, titles, and mailing addresses. *See* Opp. to Motion for Cert. at 5-6.

#### 1.  Scope of Requests

Plaintiffs seek discovery information for any potential plaintiffs who were employed by Defendants in the last six years. *See* Motion for Cert. at 14. For the reasons discussed above, I recommend that Plaintiffs' request be limited to persons employed by the Defendants at any time between June 29, 2013 and the date of the Order conditionally certifying the collective action.

#### 2.  Telephone Numbers, Email Addresses, and Dates of Employment

Regarding telephone numbers, Defendants argue that Plaintiffs' request is improper because counsel is not permitted to solicit potential plaintiffs by calling them.[8] *See* Opp. to Motion

---

[8] Defendants cite no authority in support of this proposition. *See* Opp. to Motion for Cert. at 6.

for Cert. at 6. Regarding email addresses, Defendants argue that "[c]ourts in this jurisdiction have routinely held that email dissemination of notice is improper." *See id*. (citing *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 462-63 (E.D.N.Y. 2014); *Hintergerger v. Catholic Health Sys.*, 2009 WL 3464134 (W.D.N.Y. Oct. 21, 2009); *Gordon v. Kaleida Health*, 2009 WL 3334784 (W.D.N.Y. Oct. 14, 2009); *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 91 (E.D.N.Y. 2007)). Regarding dates of employment, Defendants argue that Plaintiffs have not established why they need such information in order to send the notices, and thus, Plaintiffs are improperly seeking discovery of actual employment information instead of contact information.[9] *See id*. In response, Plaintiffs argue that "the law in this Circuit requires Defendants to provide a host of information that will help facilitate the process of sending notices to putative class or collective members." Reply I.S.O. Motion for Cert. at 3-4 (citing *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 669 (S.D.N.Y. 2013); *Hernandez v. Merrill Lynch & Co., Inc.*, 2012 U.S. Dist. LEXIS 49822 (S.D.N.Y. April 6, 2012); *Jacob v. Duane Reade, Inc.*, No. 11 Civ. 0160, 2012 U.S. Dist. LEXIS 11053 (S.D.N.Y. Jan. 26, 2012)).

"In general, it is appropriate for courts in collective actions to order the discovery of names, addresses, telephone numbers, email addresses, and dates of employment of potential collective members." *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 74-75 (E.D.N.Y. 2016) (internal quotation marks and citations omitted); *Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95, 102 (E.D.N.Y. 2014) ("In regard to requests for names, last known addresses, telephone numbers (both home and mobile), e-mail addresses, and dates of employment, courts often grant this kind of request in connection with a conditional certification of an FLSA collective action.") (internal quotation marks and citations omitted); *see also Zaldivar v. JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 327 (E.D.N.Y. 2016) (ordering defendants to produce the names, addresses, telephone numbers, email

---

[9] Defendants cite no authority in support of this proposition. *See* Opp. to Motion for Cert. at 6.

addresses, and dates of employment of potential plaintiffs); *Cherif v. Sameday Delivery Corp.*, 2015 WL 5772012, at *6 (E.D.N.Y. Sept. 30, 2015), *adopted by*, 2016 WL 4487669 (E.D.N.Y. May 24, 2016); *Fa Ting Wang v. Empire State Auto Corp.*, 2015 WL 4603117, at *14 (E.D.N.Y. July 29, 2015).

The Court sees no reason to depart from these cases. Though Defendants cite two cases in which courts have declined to order production of email addresses, both are from outside this District and are inconsistent with numerous, more recent decisions from within this District. *Compare Hintergerger*, 2009 WL 3464134, at *13, *and Gordon*, 2009 WL 3334784, at *11, *with Valerio*, 314 F.R.D. at 74-75, *and Puglisi*, 998 F. Supp. 2d at 102. Likewise, the other authority cited by Defendants is unhelpful to their arguments. In *Sharma*, the court held that although plaintiffs could not disseminate a notice of pendency by email, defendants would nonetheless be required to produce email addresses for potential plaintiffs. *See Sharma*, 52 F. Supp. 3d at 465. And in *Karvaly*, there was no discovery request at issue; the court merely ordered that notice of a class action settlement should not be sent via email. *See Karvaly*, 245 F.R.D. at 91-92.

Consequently, I respectfully recommend that Defendants be required to comply with Plaintiffs' "routine request for the names, mailing addresses, email addresses, and telephone numbers," so as to "assist in the provision of notice to these potential opt-in plaintiffs." *See Wang*, 2015 WL 4603117, at *15. Defendants should also provide the dates of employment of all potential collective members. *See Valerio*, 314 F.R.D. at 75.

### 3.   Social Security Numbers

Regarding the social security numbers, Plaintiffs' counsel asserts that it may need the information to run searches for potential plaintiffs who have changed home addresses since providing their address to Defendants. *See* Motion for Cert. at 13. Defendants counter that because

social security numbers are "highly confidential and sensitive data[,]" Plaintiffs should either be denied access to the information altogether, or if granted access, should be instructed to (1) provide Defendants with "notices of undeliverability" showing failed attempts to contact potential plaintiffs before Defendants produce the social security numbers, and (2) execute a confidentiality agreement stating that the social security numbers are "for attorneys' eyes only," and not to be shared with Plaintiffs. *See* Opp. to Motion for Cert. at 5-6 (citing *Schear v. Food Scope America, Inc.* 297 F.R.D. 114, 130 (S.D.N.Y. 2014); *Ritz v. Mike Rory Corp.*, 2013 WL 1799974, at *5 (E.D.N.Y. Apr. 30, 2013)). Plaintiffs respond that they do not object to such a confidentiality agreement, but say nothing regarding Defendants' "notices of undeliverability" proposal. *See* Reply I.S.O. Motion for Cert. at 3.

The purpose of producing contact information for potential plaintiffs is to facilitate notification of the collective action. *See Brabham v. Mega Tempering & Glass Corp.*, 2013 WL 3357722, at *8 (E.D.N.Y. July 3, 2013). Though the production of names, addresses, phone numbers, and email addresses clearly serves that purpose, some courts have found that social security numbers are "not necessary for Plaintiffs to perform their notification task." *Id.*; *see also Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 75 (E.D.N.Y. 2016) ("Courts are reluctant . . . to authorize disclosure of private information, such as dates of birth and social security numbers in the first instance and without a showing that the information is necessary for the plaintiff to notify potential opt-ins of the collective action."); *Rosario v. Valentine Ave. Disc. Store, Co.*, 828 F. Supp. 2d 508, 522 (E.D.N.Y. 2011) (denying plaintiff's request for social security numbers of potential opt-in members as unnecessary unless plaintiff was in fact unable to contact potential opt-in members with other contact information). However, where requests are denied by courts as unnecessary or premature, plaintiffs may be permitted to renew their applications for this

38

information at a later date if they are unable to effectuate notice with the contact information that has been provided. *See Valerio*, 314 F.R.D. at 75 ("If Plaintiff is unable to effectuate notice on some potential opt-in plaintiffs with the information that is produced, Plaintiff may submit a written request to obtain further information for the potential [opt-in plaintiffs]."); *Rosario*, 828 F. Supp. 2d at 522 ("If plaintiff is unable to effectuate notice on some potential opt-in plaintiffs with the information that is produced, plaintiff may renew his application for additional information regarding those specific employees."). As such, I respectfully recommend that Plaintiffs' request for the social security numbers of potential opt-in plaintiffs be denied at this time. However, if Plaintiffs are unable to effectuate notice to particular individuals, they may renew their request for the social security numbers.

### 4.   Compensation Rates

In addition to the contact information described above, Plaintiffs request that Defendants produce the compensation rates for all potential opt-in members. *See* Motion for Cert. at 14. Defendants argue that Plaintiffs are not entitled to this information because they have failed to explain why the information is "necessary for the sending of notice[.]" *See* Opp. to Motion for Cert. at 6. Plaintiffs do not respond to Defendants' argument on this issue, but instead assert that the information they are seeking is proper. *See* Reply I.S.O. Motion for Cert. at 3-4.

The parties have not cited, nor has this Court found, any case from this District discussing the propriety of requiring defendants to produce compensation rates of potential class members along with the contact information of those individuals. Certainly, Plaintiffs have articulated no persuasive reason why this information would be needed to facilitate notice to potential collective members. Moreover, while disclosure of compensation rates is relevant and appropriate as to plaintiffs who have joined the suit, requiring disclosure of this information for all potential

collective members, whether they opt in to the case or not, serves little purpose and would be unduly burdensome. I therefore respectfully recommend that Plaintiffs' request for the compensation rates of all potential opt-in collective members be denied.

The names, titles, mailing addresses, email addresses, telephone numbers, and dates of employment of all potential opt-in plaintiffs should be furnished within 14 days of the entry of the Order conditionally certifying the collective action, and should be treated by the parties as confidential. To the extent that the parties have not entered into a Stipulation and Order of Confidentiality which includes this information, the parties should be ordered to do so. Finally, Defendants should produce this information in Excel format, if reasonably available, or else in Word format or in another standard electronic format.

## IV.    CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court issue an order granting in part and denying in part Plaintiffs' motion for conditional certification. In particular, I respectfully recommend that the Court conditionally certify the collective as consisting of all former and current non-exempt persons employed by Defendants at any time between June 29, 2013 and the date of the Order conditionally certifying the collective action. I further recommend that the Court approve the Notice of Pendency and Consent forms as modified in accordance with this Report and Recommendation and direct that notice (i) be mailed to all current and former employees who worked for Defendants at any time between June 29, 2013 and the date of the Order conditionally certifying the collective action, and (ii) be posted at Defendants' place of business. Additionally, I recommend that Defendants be ordered to produce to Plaintiffs the names, titles, mailing addresses, email addresses, telephone numbers, and dates of employment of all potential opt-in plaintiffs.

## V.      OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

                                                              /s/
                                                   Steven L. Tiscione
                                                   United States Magistrate Judge
                                                   Eastern District of New York


Dated:  Brooklyn, New York
          July 18, 2017