UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
EILEEK LORA, JEFFREY GOMEZ, SERGIO
MOSCOSO, BERNARDO MENDOZA, NICHOLAS                      Case No.: 16-cv-03604
MITRANO, KEVIN MANCO, and WILMER MARIN
GARCIA, on Behalf of Themselves and All Others
Similarly Situated,

                                    Plaintiff,


                       -vs.-
TO-RISE, LLC and JORGE SALCEDO a/k/a
JORGE E. SALCEDO JR.,
                                    Defendants.
-------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR
CERTIFICATION OF SETTLEMENT CLASS, FINAL APPROVAL OF CLASS
ACTION SETTLEMENT, APPROVAL OF THE FLSA SETTLEMENT, AND IN
SUPPORT OF THE PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES AND COSTS
AND FOR APPROVAL OF SERVICE AWARDS**


William Cafaro, Esq.
LAW OFFICES OF WILLIAM CAFARO
*Class Counsel*
108 West 39th Street, Suite 602
New York, New York 10018
Tel: (212) 583-7400
Fax: (212) 583-7401
E-mail:BCafaro@CafaroEsq.com

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

I.      FACTUAL AND PROCEDURAL BACKGROUND ......................................................... 2

II.     SUMMARY OF THE SETTLEMENT TERMS ............................................................. 5

III.    THE SETTLEMENT CLASS MEETS THE LEGAL STANDARD FOR CLASS CERTIFICATION ........................................................................................................ 9

1.    Common Questions Predominate ...................................................................... 15

2.    A Class Action is a Superior Mechanism ........................................................ 15

IV.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED IN ALL RESPECTS .......................................................... 16

3.    Litigation Through Trial Would be Complex, Costly, and Long (Grinnell Factor 1) .... 19

4.    The Reaction of the Class Has Been Positive (Grinnell Factor 2) ................................. 19

5.    Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Grinnell Factor 3) ................................................................................... 20

6.    Plaintiffs Would Face Real Risks if the Case Proceeded (Grinnell Factors 4 and 5) ..... 21

7.    Maintaining the Class Through Trial Would Not Be Simple (Grinnell Factor 6) .......... 22

8.    Defendants' Ability to Withstand a Greater Judgment is Not Determinative (Grinnell Factor 7) ........................................................................................................ 22

9.    The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and   9) ......................................... 22

10.   Weighing the Factors ....................................................................................... 24

V.    APPROVAL OF THE FLSA SETTLEMENT IS APPROPRIATE UNDER FEDERAL LAW   24

VI.   THE REQUESTED SERVICE PAYMENTS ARE REASONABLE AND SHOULD BE APPROVED ............................................................................................................... 28

VII.  CLASS COUNSEL IS ENTITLED TO THE REQUESTED FEE ................................. 32

1.    Class Counsel has expended significant time and effort on this case ............................. 36

2.    The large and complex nature of this litigation warrants the award of attorneys' fees being requested ...................................................................................................... 37

3.    Class Counsel took on a large amount of risk in prosecuting this case .......................... 39

4.    Class Counsel's representation has been of the highest quality ..................................... 39

5.      The requested fee is reasonable in relation to the settlement...........................................40

6.      Public policy weighs in favor of awarding attorneys' fees.............................................41

CONCLUSION...................................................................................................................................44

# TABLE OF AUTHORITIES

## Cases

*Aken Gonqueh v. Leros Point to Point, Inc.*, No. 14 Civ. 5883, 2016 U.S. Dist. LEXIS 24231, at *9 (S.D.N.Y. Feb. 26, 2016) ........................................................................................... 17

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) .................................................. 14, 16

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84 (S.D.N.Y. 2001) ................. 24, 38

*Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany & Albany County Board of Elections*, 522 F.3d 182, 191 (2d Cir. 2008) ............................................................ 34

*Asare v. Change Grp. N.Y., Inc.*, No. 12 Civ. 3371, 2013 U.S. Dist. LEXIS 165935, *46 (S.D.N.Y. Nov. 18, 2013) ............................................................................................................... 35

*Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981) .......................................... 38

*Beckert v. Rubinov*, 15-cv-1951 (PAE), 2015 U.S. Dist. LEXIS 167052, at *4-5 (S.D.N.Y. Dec. 14, 2015) ...................................................................................................................................... 25

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013) ...................................... 33, 43

*Behzadi v. Int'l Creative Mgmt. Partners, LLC*, No. 14 Civ. 4382, 2015 U.S. Dist. LEXIS 90117, *6-7 (S.D.N.Y. July 9, 2015) .......................................................................................... 34

*Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374-81 (7th Cir. 2015) ........................................ 11

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980) .................................................................. 35

*Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002) ....................... 12

*Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) ...................................................................................................................................... 23

*Capsolas v. Pasta Resources Inc.*, No. 10 Civ. 5595, 2012 U.S. Dist. LEXIS 144651, *26, (S.D.N.Y. Oct. 5, 2012) ................................................................................................................ 32

*Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 177 (E.D.N.Y. 2012) .............. 34, 40

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) .......................... 17, 19, 23, 39

*Clark v. Ecolab Inc.*, 2010 U.S. Dist. LEXIS 47036, at *14-15 (S.D.N.Y. May 11, 2010) ... 11, 44

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) .............................. 10

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007). 15

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y 2008) ...................................... 13

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 161-164 (S.D.N.Y 2008) .............................. 16

*DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494, 2015 U.S. Dist. LEXIS 65261, at *13-15

(S.D.N.Y. May 7, 2015 .................................................................................. 41

*Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) .................................. 9

*Elliot v. Leatherstocking Corp.,* 10-cv-0934, 2012 U.S. Dist. LEXIS 171443, at *17 (N.D.N.Y
    Dec. 4, 2012) ...................................................................................... 42

*Fears v. Wilhelmina Model Agency, Inc.*, No. 02 Civ. 4911 (HB), 2003 U.S. Dist. LEXIS 11897,
    at *12-13 (S.D.N.Y. July 15, 2003) .......................................................... 13

*Felix v. Breakroom Burgers & Tacos*, 15-cv-3531 (PAE), 2016 U.S. Dist. LEXIS 30050, at *4-5
    (S.D.N.Y. Mar. 8, 2016) ........................................................................ 25

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y 2005) ...................... 10, 31, 38

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*, No. 09 Civ. 486, 2012 U.S. Dist. LEXIS 144446,
    at *19 (E.D.N.Y. Oct. 4, 2012) ............................................................... 41

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982) ............................... 10

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000) ............... 35, 36, 38, 42

*Gomez v. Bogopa Madison LLC*, No. 17-CV-5006 (RA), 2017 U.S. Dist. LEXIS 211003, at *4-5
    (S.D.N.Y. Dec. 21, 2017) ...................................................................... 27

*Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968) ......................................... 15

*Griffin v. Astro Moving & Storage Co. Inc.*, No. 11-CV-1844 (MKB), 2015 U.S. Dist. LEXIS
    43326, 2015 WL 1476415, at *8 (E.D.N.Y. Mar. 31, 2015) ........................... 42

*Guippone v. BH S&B Holdings, LLC*, No. 09 Civ. 1029, 2011 U.S. Dist. LEXIS 126026, at *20
    (S.D.N.Y. Oct. 28, 2011) ....................................................................... 30

*Henry v. Little Mint, Inc.*, 2014 U.S. Dist. LEXIS 72574, at *18 (S.D.N.Y. May 23,
    2014)(McMahon, D.J.) ........................................................................... 25

*Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 102 (E.D.N.Y. 2015) ...................... 33

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd
    sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ................... 19, 20

*In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014) .......... 34, 39

*In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 219 (5th Cir.1981) ...................... 7

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05 Civ 10240, 2007 U.S. Dist. LEXIS 57918,
    at *12 (S.D.N.Y. July 27, 2007) ............................................................ 18

*In re Frontier Ins. Grp., Inc. Sec. Litig.*, 172 F.R.D. 31, 41 (E.D.N.Y. 1997) ................ 13

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) ............ 35

*In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969) .................................. 21

*In re Ivan F. Boesky Sec. Litig.*, 888 F. Supp. 551, 561-62 (S.D.N.Y. 1995).............................. 43

*In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 514-15 (S.D.N.Y. 1996)............ 12

*In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997)........................... 21

*In re PaineWebber P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997) ................................................................................................................... 7

*In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999) .................................. 34

*In re Visa Check/MasterMoney Antitrust Litig*, 280 F.3d 124, 139 (2d Cir. 2001)............... 15, 16

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)................................. 20

*Jiminez v. Allstate Ins. Co.*, 765 F.3d. 1161, 1165-66 (9th Cir. 2014) .......................................... 11

*Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986) .............. 10

*Khait v. Whirlpool Corp.*, No. 06-cv-6381, 2010 U.S. Dist. LEXIS 4067, *26 (E.D.N.Y Jan. 20, 2010).................................................................................................................................. 32

*Kochilas v. Nat'l Merch. Servs.*,14 Civ. 00311, 2015 U.S. Dist. LEXIS 135553, at *8-9 (E.D.N.Y. Oct. 2, 2015)........................................................................................................ 17, 20

*Lizondro-Garcia v. Kefi LLC*, 2014 U.S. Dist. LEXIS 143165, at *8 (S.D.N.Y. Oct. 7, 2014) .................................................................................................................................... passim

*Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 176 (S.D.N.Y. 2014) .................................. 14, 16

*Lovaglio v. W & E Hospitality, Inc.*, No. 10 Civ. 7351, 2012 U.S. Dist. LEXIS 94077, *9 (S.D.N.Y Jul. 5 2012)............................................................................................................... 32

*Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) ........................... 20

*Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) .......................................................... 11

*Martinez v. Bella Bianchi's Ltd., et al.*, 16-cv-6800 (LB), D.E. 22, fn 2 (E.D.N.Y Aug. 15, 2017) .......................................................................................................................................... 40

*McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005)........................................... 15

*McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) ........................................ 33

*Mendes-Garcia v. 77 Deerhurst Corp.*, 2014 U.S. Dist. LEXIS 188290, at *12-13 (S.D.N.Y. Aug. 18, 2014)................................................................................................................................ 40

*Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d. 611, 615-16 (S.D.N.Y 2012)....... 11, 12, 21

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) .......................... 23

*Pall Corp. v. 3M Purification Inc.*, No. CV 97-7599 (RRM)(ETB), 2012 U.S. Dist. LEXIS 76755,

at *11 (E.D.N.Y. June 1, 2012) ............................................................................ 42

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 U.S. Dist. LEXIS 12762, at *4 (S.D.N.Y. Feb. 9, 2010) ................................................................. 29, 31

*Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983) ..................................................................................................... 10

*Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 217 (S.D.N.Y. 2015) ........................................... 15, 22

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) ........... 10

*Reyes v. Altamarea Group*, 2011 U.S. Dist. LEXIS 115984, *24 (S.D.N.Y Aug. 16 2011)........ 32

*Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993) ............................................ 11

*Rodriguez-Hernandez v. K Bread & Co.*, No. 15-cv-6848 (KBF), 2017 U.S. Dist. LEXIS 78034, at *10 (S.D.N.Y. May 23, 2017) .............................................................. 25

*Sand v. Greenberg*, No. 08 Civ. 7840, 2010 U.S. Dist. LEXIS 1120, *9 (S.D.N.Y. Jan. 7, 2010) ................................................................................................................... 33

*Savoie v. Merchants Bank*, 166 F.3d 456, 461 (2d Cir. 1999)...................................... 44

*Schear v. Food Scope Am., Inc.* 297 F.R.D. 114, 126 (S.D.N.Y 2014)......................... 16

*Sewell v. Bovis Lend Lease LMB, Inc.*, 09 Civ. 6548, 2012 U.S. Dist. LEXIS 53556, at *21-22 (S.D.N.Y. Apr. 16, 2012) ........................................................................ passim

*Sewell v. Bovis Lend Lease LMB, Inc.*, 2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 16, 2012) 5, 26

*Slomovics v. All for a Dollar*, 906 F. Supp. 146, 150 (E.D.N.Y. 1995) ...................... 20

*Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 337 (S.D.N.Y 2010) .................................. 13

*Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) ............................ 43

*Strougo ex rel. The Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) ................................................................................................. 34

*Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216, 2014 U.S. Dist. LEXIS 105596, at *26 (S.D.N.Y. July 31, 2014)........................................... 33, 38, 41

*Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ................................................ 35

*Taft v. Ackermans*, 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y. Jan. 31, 2007).................... 40

*Tiro v. Pub. House Invs., LLC*, 11 Civ. 7679, 2013 U.S. Dist. LEXIS 129258, at *15 (S.D.N.Y. Sep. 10, 2013)................................................................................ 17, 37

*Tiro v. Pub. House Invs., LLC*, 2013 U.S. Dist. LEXIS 129258 (S.D.N.Y. Sep. 10, 2013)........... 5

*Torres v. Gristede's Operating Corp.*, Nos. 04 Civ. 3316, 08 Civ. 8531, 08 Civ. 9627, 2010 U.S. Dist. LEXIS 139144, *22 (S.D.N.Y. Dec. 21, 2010) .................................................. 32

*Toure v. Amerigroup Corp.*, 2012 U.S. Dist. LEXIS 110300, at *7-8 (E.D.N.Y. Aug. 6, 2012). 18

*Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) .................................................................................................................................. 12

*Trinidad v. Breakaway Courier Sys., Inc.*, No. 05 Civ. 4116, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007) .............................................................................................................. 12

*Vargas v. Howard*, 324 F.R.D. 319, 329 (S.D.N.Y. 2018) .................................................... 14

*Velez v. Majik Cleaning Serv.,* 2007 U.S. Dist. LEXIS 46223, at *19-20 (S.D.N.Y. June 22, 2007) ............................................................................................................................ 21, 29

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) .................................. 43, 44

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ............. 17, 33, 34, 35

*Willix v. Healthfirst, Inc.*, 2011 U.S. Dist. LEXIS 21102, at *15-19 (E.D.N.Y. Feb. 18, 2011).. 41

*Wolinsky v. Scholastic, Inc.* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) ................................ 24, 25

*Yuzary v. HSBC Bank USA, N.A.*, 2013 U.S. Dist. LEXIS 144327, at *29 (S.D.N.Y. Oct. 2, 2013) ............................................................................................................................ 43, 44

*Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531, 2014 U.S. Dist. LEXIS 135635, at *22 (S.D.N.Y. Sept. 23, 2014) ............................................................................................................ 44

## Rules

Fed. R. Civ. P. 23(a) ................................................................................................................ 9

Fed. R. Civ. P. 23(a)(4) ........................................................................................................... 12

Fed. R. Civ. P. 23 (b)(3) .................................................................................................. 9, 14, 16

Fed. R. Civ. P. 23(e) ............................................................................................................... 16

Fed. R. Civ. P. 23(h) ................................................................................................................ 7

Fed. R. Civ. P. 54(d)(2) ............................................................................................................ 4

## <u>INTRODUCTION</u>

Subject to final Court approval, Plaintiffs and To-Rise, LLC ("To-Rise") Jorge Salcedo a/k/a Jorge E. Salcedo Jr. ("Salcedo") (To-Rise and Salcedo are collectively referred to herein as the "Defendants") (together with Plaintiffs, referred to as the "Parties") have agreed to settle this wage and hour class and collective action in the gross amount of $627,500.00 to cover global resolution of the settlement class' claims.  The Parties seek an order: (1) certifying the settlement class described below; (2) approving the class-wide settlement of this action as fair and adequate, as set forth in the Settlement Agreement and Release ("Agreement") appended as Ex. "1" to the Declaration of William Cafaro in Support ("Cafaro Decl.")[1]; (3) approving the FLSA settlement.   The Plaintiffs further seek an Order (1) awarding Class Counsel attorneys' fees and costs in an amount of $209,166.67 (33 1/3 % of the Settlement Fund) and (2) Awarding service awards of $10,000.00 to each of the following Named Plaintiffs: Jeffrey Gomez, Kevin Manco, Wilmer Marin, Bernardo Mendoza Galindo, Nicholas Mitrano, and Sergio A. Moscoso and awarding  a $15,000.00 service award to the First Named Plaintiff Eileek Lora.

On August 16, 2019, the Court preliminarily approved the Agreement, and in so doing provisionally certified the Settlement Class pursuant to Federal Rule of Civil Procedure 23, appointed William Cafaro, Esq. of The Law Offices of William Cafaro as Class Counsel; directed that notice of the proposed settlement be sent, and set the fairness hearing for May 1, 2020.  D.E. 88. All reaction to date has been positive, Cafaro Decl. ¶ 42-3. No Class Members have opted out of this settlement or objected. *Id*. at ¶¶ 45-6.  For the reasons stated below, Plaintiffs submit that the Court should grant final approval.

---

[1] Unless otherwise indicated all exhibits are attached to the Cafaro Decl. and are designated as "Ex."

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      <u>The Litigation</u>

Named Plaintiffs Eileek Lora, Jeffrey Gomez, Sergio Moscoso, Bernardo Mendoza, Nicholas Mitrano, Kevin Manco, and Wilmer Marin Garcia filed a class and collective action on June 29, 2016.  Cafaro Decl. at ¶ 5; Doc. [2] 1.  In their complaint, they alleged that they, and others similarly situated, had not been fully paid overtime in violation of the Fair Labor Standards Act ("FLSA") and ("NYLL"); that they had not been paid for all hours they worked under 40 hours per week (gap claims); that Defendants routinely made illegal deductions from their wages in violation of the NYLL; and that they did not receive proper wage notices or wage statements under the NYLL. *Id.*  Defendants answered the Complaint on August 11, 2016 and interposed four counterclaims (i) Breach of Duty of Loyalty/Faithless Servant against all Plaintiffs; (ii) Conversion against Named Plaintiffs Garcia, Mendoza, and Moscoso; (iii) Conspiracy to Commit Conversion against all Plaintiffs; and (iv) Breach of Fiduciary Duty against all Named Plaintiffs.  Cafaro Decl. at ¶ 6; Doc. 17.  On August 30, 2016, the Plaintiffs amended their Complaint to add claims for retaliation under the FLSA and NYLL. *Id.* at 7; Doc. 20. Defendants Answered the Plaintiffs' Amended Complaint on September 19, 2016 continuing to interpose the same counterclaims. Cafaro Dec. at ¶ 8; Doc. 22.  On December 23, 2016 the Plaintiffs filed an Answer to the Defendants counterclaims. Cafaro Decl. at 9; Doc. 29.

After unsuccessful attempts to negotiate a stipulation with Defendants' previous counsel, on November 16, 2016, Plaintiffs filed a motion for conditional certification of a FLSA

---

[2] "Doc." refers to the corresponding document in the Court's CM/ECF electronic docketing system.

collective action pursuant to 29 U.S.C. § 216(b). Cafaro Dec. at ¶ 10.   Due to the Court's bundling rule, the fully briefed motion was filed on January 6, 2017. *Id*. at ¶ 11; Docs. 35, 36 and 37. On January 27, 2017, the District Court referred the motion for collective certification to the Honorable Magistrate Judge Tiscione for a Report and Recommendation. Cafaro Decl. at ¶ 12. On July 18, 2017, Magistrate Judge Tiscione issued a report and recommendation conditionally certifying the FLSA collective and granting other relief (the "R&R").   *Id*. at ¶ 13; Doc. 41.  On August 1, 2017, Defendants' former counsel filed an objection to the R&R based stating that the Magistrate Judge had not properly analyzed whether the Named Plaintiffs had a conflict of interest due to the Defendants' counterclaims.   Cafaro Decl. at ¶ 14: Doc. 42. Plaintiffs opposed Defendants objection to the R&R on August 15, 2017.  Cafaro Decl. at ¶ 15; Doc. 43.  On September 15, 2017, the District Court adopted the R&R in its entirety and rejected former defense counsel's objections thereto.  Cafaro Decl. at ¶ 16; Doc. 44.  On October 13, 2017, the Court approved notice was sent to the members of the collective and 27 people have filed consents to join the collective.  Cafaro Decl. at ¶ 17.

On November 20, 2018, the Parties stipulated to the jurisdiction of the Honorable Magistrate Judge Sanket J. Bulsara.  *Id*. at ¶ 19.  On March 19, 2019 the Court denied the Parties joint motion for preliminary class certification without prejudice noting specific issues with the allocation of settlement funds.  *Id*. at ¶ 20, Doc. 83.  The Parties restructured their settlement agreement after a hearing on the matter.  Cafaro Decl. at ¶ 21.

## B.    Investigation,  Discovery and Settlement Negotiations

Before filing, Plaintiffs' Counsel conducted a thorough factual investigation. *Id*.  at ¶ 22. Plaintiffs' Counsel conducted in-depth interviews with each of the Named Plaintiffs and

reviewed all their documents and other data in order to evaluate the risks of the case. *Id.* Before engaging in mediation, Defendants produced hundreds of pages of documents so that Plaintiffs could analyze the Class Members' alleged damages. *Id.* Such documents consisted of time and payroll records of the Named Plaintiffs and Class Members. Plaintiffs' Counsel also conducted a thorough investigation and legal research on the underlying merits of Plaintiffs' and Class Members' claims and the purposed damages. On February 21, 2018, the Parties held a mediation session. *Id.* at ¶ 26. Although progress was made, no settlement was reached. *Id.* After further discovery and follow-up telephone calls the parties reached a substantial agreement on all the material terms, *Id.* at ¶ 28. These have now been memorialized in the Settlement Agreement for which the Parties seek approval upon this motion.

### C.      **Plaintiffs' Motion for Preliminary Approval**

On September 26, 2018, the Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel and Approval of Plaintiffs' Proposed Notice of Settlement ("Motion for Preliminary Approval"). D.E. 78. After the parties jointly revised the settlement agreement and made other Court required edits, the Parties filed a Second Motion for Preliminary Approval of Class Action Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel and Approval of Plaintiffs' Proposed Notice of Settlement ("Second Motion for Preliminary Approval"). The Court ordered the Parties to make certain edits to the Notice to the Class.

After the parties jointly revised the Notice, the Court preliminarily approved the Parties' proposed settlement, conditionally certified the proposed Rule 23 Settlement Class, appointed

William Cafaro Esq. of the Law Offices of William Cafaro as Class Counsel, approved the proposed notice and distribution of same, ordered a class action settlement procedure and set the final fairness hearing for May 1. 2020. D.E. 88.

## II.     SUMMARY OF THE SETTLEMENT TERMS

### A.     The Settlement Fund and Class Members

The Settlement Agreement creates a Gross Settlement Fund of $627,500.00 (the "Fund"). Agreement, Ex. 1 at § 1.20.  The Settlement Agreement covers the awards of all Class Members who choose to participate and become Authorized Claimants, the cost of settlement administration, any Court-approved service payments, and any Court-approved attorneys' fees and expenses. The Class is defined to include all individuals employed by To-Rise who performed work as Office Workers, Warehouse Workers, or Drivers, and any other employees whether part-time, full-time or as a temporary employee from June 29, 2010 through the date of execution of the Agreement who sign and return claim forms and do not opt out of the class may participate in the settlement.  *Id*. at § 1.5.

### B.     Releases

Class Members who do not timely opt-out release Defendants from all wage and hour claims under the NYLL or any other state or local statute rule or ordinance governing the payment of wages, but not under the FLSA. *See Id*. at §§ 1.34; 3.12(A); *see also Tiro v. Pub. House Invs., LLC*, 2013 U.S. Dist. LEXIS 129258 (S.D.N.Y. Sep. 10, 2013) (Granting final approval of a settlement wherein all class members release all wage and hour claims against the Defendants); *Sewell v. Bovis Lend Lease LMB, Inc.*, 2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 16, 2012) (Granting final approval of a settlement where "[t]he class members who did not opt-out will effectively release Defendants from all wage and hour claims under the NYLL that were asserted,

or could have been asserted, in the Complaint.").

Each Class Claimant who files a Claim Form and Release shall release Defendants from all wage and hour claims under both the FLSA, NYLL, or any state or local statute, rule, or ordinance governing the payment of wages.  Agreement at §§ 1.35; 3.12(B).  All recipients of Court approved service awards will generally release the Defendants.  *Id*. at §§ 1.40; 3.12(C).  Lastly, due to the counterclaims against the Named Plaintiffs, the Defendants have generally released the Named Plaintiffs. *Id*. at §§ 1.24, 3.12(E).

### C.   **Allocation Formula**

The parties have agreed that Plaintiffs may petition the Court for an award from the Settlement Fund for attorneys' fees and costs, as well as for service awards for the Named Plaintiffs, and settlement administration costs have been negotiated at $25,000.00.  Cafaro Decl. at ¶ 31, Agreement at §§ 2.8(C), 3.3, 2.1(B), 1.38.  After subtracting these amounts, the remaining funds (the "Net Settlement Fund") will be allocated among the Class Members based on an allocation formula.  Each Class Member who does not opt out of the settlement ("Authorized Claimant") will receive a proportional share of the Net Settlement Fund based on the number of weeks he or she worked for the Defendants.  Cafaro Decl at ¶ 32.  The development of the allocation formula began with the assumption that all Class Members, were not properly paid for three hours every week that they worked for the Defendants throughout the claim period.  Cafaro Dec. at ¶ 33.  This is based on the anticipated testimony of Eileek Lora, who was instructed to make adjustments to the payroll records on an ongoing bases, and upon interviews of the Named Plaintiffs as well as other Class Members, who were interviewed as part of Plaintiffs' Counsel's investigation before and during the litigation.  *Id*.

Significantly, there is no reversionary component to this settlement.  *Id*. at ¶35   Any

checks that are not cashed get redistributed to the Authorized Claimants in the next Distribution. *Id.*. Any checks that remain uncashed after the Sixth and final QSF distribution, will go to the *cy pres*, the National Employment Law Project (N.E.L.P.). If N.E.L.P. is no longer operating at that time, the Board of Directors of the National Employment Lawyers Associations will designate where these funds should be applied toward the end of ending wage and hour abuses. *Id.* at ¶ 35.

Now that notice has gone out and the entire class has had a chance to evaluate the settlement and the allocation formula, there has been no negative reaction or complaint from anyone in any of the tiers. Cafaro Decl. ¶ 43-46. Like any allocation formula, class members with different circumstances might view it differently. *See In re PaineWebber P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997) ("in the case of a large class action the apportionment of a settlement can never be tailored to the rights of each plaintiff with mathematical precision…"); *In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 219 (5th Cir.1981) (negotiation of an allocation formula among classes avoids "the almost impossible task of determining the distribution of the settlement fund among the myriad claimants") (citing *In re Equity Funding Corp. of America Securities Litig.,* 603 F.2d 1353, 1365 (9th Cir. 1979).

### D.  Attorneys' Fees, Litigation Costs, and Expenses

Plaintiffs' seek Court approval for Thirty-Three and One Third Percent (33.333%) of the Gross Settlement Fund as attorneys' fees, costs, and expenses totaling $209,166.67.  Pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), Plaintiffs have moved for Court approval of their Attorneys' Fees and Costs together with their Motion for Final Approval.

### E.     Service Payments

Plaintiffs respectfully request that the Court approve service awards of $10,000.00 each to Named Plaintiffs Jeffrey Gomez, Kevin Manco, Wilmer Marin, Bernardo Mendoza Galindo, Nicholas Mitrano, and Sergio A. Moscoso and a $15,000.00 service award to First Named Plaintiff Eileek Lora ("Service Awardees") in recognition of the services they rendered on behalf of the Class. The payments are reasonable in light of the time and effort they expended in furtherance of the litigation and settlement and the risks they endured in order to vindicate their rights and the rights of absent class members.

### F.     Settlement Claims Administrator

The Parties have designated Analytics Consulting LLC of 18675 Lake Drive East, Chanhassen, MN 55317 to act as the Settlement Claims Administrator ("Analytics") to act as the Settlement Claims Administrator.  Cafaro Decl. at ¶ 36.  The Claims Administrator's fees will be paid out of the Gross Settlement Fund. Ex. 1 at §2.1(B). On October 7, 2019, Analytics mailed Court-approved Notices to 162 Class Members, using the names and addresses provided by Defendants.  Cafaro Decl. at ¶ 38; Ex.2 at ¶9.  After the Notices were mailed, Analytics received 28 returned notices.  Cafaro Decl. at ¶ 39; Ex.2 at ¶10.  Analytics performed address traces for the undeliverable Notices and found addresses for 20 of these Class Members for whom new addresses were located.  *Id.* Analytics then re-mailed 20 Notices.  *Id.*

The response to the Notices has been overwhelmingly positive.  The Notice advised Class Members, among other things, that they could join, object to, or exclude themselves from the settlement. Ex. 2 at ¶ 9. No Class Members objected to the settlement, nor have any Class Members requested exclusion. Cafaro Decl. at ¶¶ 45-6; Ex 2 at ¶¶ 13-4.  Moreover, ultimately, thirty-four (34) Class Members have filed Claim Forms. Cafaro Decl. at ¶ 44; Ex 2 at ¶ 12. With

a total Class membership of 162 the proposed settlement has realized 22% participation, which is excellent by any standard.

## III.    THE SETTLEMENT CLASS MEETS THE LEGAL STANDARD FOR CLASS CERTIFICATION

When faced with a proposed class action settlement, courts first examine whether the settlement class can be certified.  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006).  On August 16, 2019, the Court preliminarily certified a Class consisting of:

> All individuals, including opt-in Plaintiffs, employed by To-Rise to perform work as Office Workers, Warehouse Workers, Drivers, and any other classes of employees, employed by To-Rise, whether part-time, full time or as a temporary employee from June 29, 2010 through June 28, 2019 ("NYLL Class")

D.E. 88.   The Court should now grant final certification because the settlement all the requirements of Rule 23 and because "no facts have been presented… to indicate[d] that [the] preliminary determination [to certify a settlement class] was incorrect." *Lizondro-Garcia v. Kefi LLC*, 2014 U.S. Dist. LEXIS 143165, at *8 (S.D.N.Y. Oct. 7, 2014).

Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the court to find that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *Id.* at (b)(3).  In the Second Circuit,

"Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

**A.    Numerosity**

"[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiffs easily satisfy this requirement because there are over 160 Class Members. Cafaro Decl. at ¶ 38.

**B.    Commonality**

The proposed settlement class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). Although the claims need not be identical, they must share common questions of fact or law. *Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983). The proper question is whether there is a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986). Courts construe the commonality requirement liberally. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y 2005) (citation omitted).

This case involves several common factual and legal issues, including whether Defendants: (1) failed to properly pay overtime; (2) made unlawful deductions from the Plaintiffs' wages; (3) failed to provide wage statements; and (4) failed to provide proper wage

notices with every payment of wages.   Another common issue includes whether To Rise maintained adequate records.  *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d. 611, 615-16 (S.D.N.Y 2012) (commonality satisfied where, among other allegations, plaintiffs claimed that defendant had policy of not paying all class members overtime pay); *Clark v. Ecolab Inc.*, 2010 U.S. Dist. LEXIS 47036, at *14-15 (S.D.N.Y. May 11, 2010) (common issues included "whether [defendant] failed to pay [p]laintiffs and the… [c]lass [m]embers overtime premium pay for all hours they worked over 40 in a workweek; and… whether [defendant] maintained accurate time records of the hours [p]laintiffs and the state settlement [c]lass [m]embers worked")).  Moreover, Courts have granted class certification to classes of workers raising similar allegations.  *See, e.g.*, *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d. 360, 374-81 (7th Cir. 2015) (affirming grant of class certification in off-the clock FLSA action); *Jiminez v. Allstate Ins. Co.*, 765 F.3d. 1161, 1165-66 (9th Cir. 2014) (same).  Therefore, commonality exists in this action.

### C.      Typicality

Rule 23 requires that the claims of the representative party be typical of the claims of the class. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members."  *Frank*, 228 F.R.D. at 182 (citation omitted).  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotations omitted). "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendants direct "the same unlawful conduct" at the named plaintiff and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).  Courts evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have

against certain class members." *Trinidad v. Breakaway Courier Sys., Inc.*, No. 05 Civ. 4116, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007) (quoting *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)).  "[T]he typicality requirement is not highly demanding".  *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002) (citation omitted).

Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Rule 23 Class Members' claims.  Plaintiffs alleged that the Defendants failed to pay them for all of the hours they worked pursuant to the same company policy and pattern or practice. The Named Plaintiffs also claim the same injuries as do Class Members – that Defendants failed to properly pay them all for the total hours worked.  Accordingly, Plaintiffs satisfy the typicality requirement. *See Hernandez*, 2012 WL 5862749, at *3 (typicality satisfied where "[p]laintiffs' claims for overtime pay [arose] from the same factual and legal circumstances that form[ed] the bases of the [c]lass [m]embers' claims"); *Morris*, 859 F. Supp. 2d at 616 (same).

### D.  <u>Adequacy of the Named Plaintiffs</u>

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that the named representative will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" *Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007). (quoting *Penney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir. 2006)).  The conflict must be "so palpable as to outweigh the substantial interest of *every* class member in proceeding with the litigation." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 514-15 (S.D.N.Y. 1996) (emphasis added).  Moreover, "a representative may satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him [or her]

12

that would not impact other class members". *In re Frontier Ins. Grp., Inc. Sec. Litig.*, 172 F.R.D. 31, 41 (E.D.N.Y. 1997) (quotations and citations omitted). "The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y 2008); *see also*, *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 337 (S.D.N.Y 2010). In this case, the Named Plaintiffs have actively participated in the discovery process by responding to written discovery requests, producing documentation, sitting through intake with Plaintiffs' Counsel, and some attended a failed mediation session. Cafaro Decl. at ¶ 26. Moreover, as stated above, the Named Plaintiffs' claims are typical to those of the class. As such, they should be named as Class representatives in this action.

Regarding the Defendants' counterclaims the First, Third, and Fourth Counterclaims for Breach of Duty of Loyalty/Faithless Servant (First), Conspiracy to Commit Conversion (Third), and Breach of Fiduciary Duty (Fourth) were plead against "All Plaintiffs". These counterclaims do not state that they are against the Named Plaintiffs, or are against specific Named Plaintiffs, as such they were plead against the entire Class and are not unique to the Named Plaintiffs. So, the only "unique" counterclaim that could present a challenge to this factor is Defendants Second Counterclaim Against Plaintiffs Garcia, Mendoza and Moscoso for Conversion. But this counterclaim or any other counterclaim failed to become a "focus of the litigation." *See*, *Fears v. Wilhelmina Model Agency, Inc.*, No. 02 Civ. 4911 (HB), 2003 U.S. Dist. LEXIS 11897, at *12-13 (S.D.N.Y. July 15, 2003) ("I am unconvinced, and indeed believe it unlikely, that the potential counterclaims or defenses will threaten to become a focus of the litigation here, which might make class certification inappropriate.") (citations omitted);

*see also*, *Vargas v. Howard*, 324 F.R.D. 319, 329 (S.D.N.Y. 2018) (Finding a Named Plaintiff to be an adequate class representative, over Defendants' opposition, where the Defendants had interposed counterclaims for breach of fiduciary duty and conversion against the Named Plaintiff "and all other opt in Plaintiffs" and the Court did not believe the Named Plaintiff would need to "devote considerable time" to rebut the final and only unique counterclaim of defamation).  Moreover, the Parties did ***not*** conduct any discovery on the counterclaims, and they were not a main focus of the litigation. Rather, the main focus of the litigation since its inception was the prosecution of the Plaintiffs' claims.  As there is no evidence that the Named Plaintiffs' interests are antagonistic to or at odds with those of the Class Members, the Named Plaintiffs meet the adequacy requirement.  *See Morris*, 859 F. Supp. 2d at 616 (no evidence that named plaintiffs' and class members' interests were at odds).

Given the above the Named Plaintiffs meet the adequacy requirement because there is no evidence that they have interests that are antagonistic to or at odds with those of Class Members. *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 176 (S.D.N.Y. 2014), *final approval granted*, 12 Civ. 1906, 2014 U.S. Dist. LEXIS 143165, at *15 (S.D.N.Y. Oct. 7, 2014).[3]

### E.  Certification is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

---

[3] For reasons stated in Section VI, *supra*, Class Counsel also meets the adequacy requirement of Rule 23(a)(4).

1.      **Common Questions Predominate**

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check/MasterMoney Antitrust Litig*, 280 F.3d 124, 139 (2d Cir. 2001). Where plaintiffs are "unified by a common legal theory" and by common facts, predominance is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, Class Members' common factual allegations and legal theory – that Defendants violated federal and state law by failing to pay them overtime wages and failing to pay them all their wages generally - predominate over any variations among Class Members. *See, Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 217 (S.D.N.Y. 2015) (finding predominance where common questions were whether the class members were entitled to overtime under the FLSA and NYLL and whether the defendant had a companywide policy to deprive the class of overtime pay).

2.      **A Class Action is a Superior Mechanism**

Plaintiffs also satisfy the superiority requirement. Superiority analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including: the class members' interests in individually controlling the prosecution or defense of separate actions; whether individual class members wish to bring, or have already

brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[4]

The class action device is superior in this case because it is unlikely that individual class members would have brought their claims if not for this case.  In addition, employing the class device here will achieve economies of scale, will conserve the resources of the judicial system, and will avoid the waste and delay of repetitive proceedings and inconsistent adjudications of similar claims.  *Schear v. Food Scope Am., Inc.* 297 F.R.D. 114, 126 (S.D.N.Y 2014) ("Courts routinely hold that a class action is superior where, as here, potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by the defendants.") (collecting cases); *Lizondro-Garcia*, 300 F.R.D. at 177 (class action more economical "due to plaintiffs' limited financial resources and the relatively modest size of any individual's recovery"); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 161-164 (S.D.N.Y 2008) (same). A class action is the best mechanism to fairly and efficiently resolve Class Members' claims.

## IV.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED IN ALL RESPECTS

Rule 23 requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e). "Approval

---

[4] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement.  *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial."); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement."). Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *In re Visa Check/MasterMoney Antitrust Litig*, 280 F.3d at 140.

of a class action settlement is within the Court's discretion, which should be exercised in light of the general judicial policy favoring settlement." *Tiro v. Pub. House Invs., LLC*, 11 Civ. 7679, 2013 U.S. Dist. LEXIS 129258, at *15 (S.D.N.Y. Sep. 10, 2013) (citations and internal quotations omitted).  To determine procedural fairness, courts examine the negotiating process leading to the settlement.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005).  To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ("*Grinnell*").

Courts examine procedure and substantive fairness in light of the "'strong judicial policy in favor of settlement'" of class action suits.  *Wal-Mart Stores*, 396 F.3d. at 116.

## A.   The Settlement Is Procedurally Fair

The settlement is procedurally fair because it was reached through vigorous, arm's length negotiations that included a mediation with an experienced mediator, and after experienced counsel for both parties extensively evaluated the merits of the claims and defenses.  *See*, *Aken Gonqueh v. Leros Point to Point, Inc.*, No. 14 Civ. 5883, 2016 U.S. Dist. LEXIS 24231, at *9 (S.D.N.Y. Feb. 26, 2016) (Finding a settlement to be fair, reasonable and adequate where it had "been reached as the result of intensive, arms-length negotiations, including mediation with an experienced third-party neutral."); *Kochilas v. Nat'l Merch. Servs.*,14 Civ. 00311, 2015 U.S. Dist. LEXIS 135553, at *8-9 (E.D.N.Y. Oct. 2, 2015) ("[A] presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.")  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the

17

settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05 Civ 10240, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007).

Here, the parties engaged in extensive discovery, including, but not limited to, the production of payroll records and time keeping documents showing or tending to show the days and the hours where work was done.  Cafaro Decl. at ¶ 22.  Plaintiffs' Counsel interviewed many Class Members about their duties, the hours they worked, and their practices with respect to recording time.  *Id.*.  In addition, the parties engaged in arm's length negotiations with a private mediator, who assisted the parties to understand the strengths and weaknesses of their respective positions. *Id.* at ¶ 23.  Based on these circumstances, the parties were able to achieve a settlement which is procedurally fair.  *See*, *Lizondro-Garcia*, 2014 U.S. Dist. LEXIS 143165, at *10-11 (finding settlement procedurally fair where the parties exchanged sample of time sheets and payroll records, engaged in settlement negotiations, and participated in a settlement conference); *Toure v. Amerigroup Corp.*, 2012 U.S. Dist. LEXIS 110300, at *7-8 (E.D.N.Y. Aug. 6, 2012) (finding procedural fairness where plaintiffs conducted a thorough investigation of the claims and enlisted the services of an experienced employment law mediator).

### B. The Settlement Is Substantively Fair

In *Grinnell*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement.  The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of

litigation. *Grinnell*, 495 F.2d at 463. All of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement.

### 1.    Litigation Through Trial Would be Complex, Costly, and Long (Grinnell Factor 1)

By reaching a settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). This case is no exception, with over one hundred Class Members and multiple claims. Moreover, as Defendants maintained time and payroll records, Plaintiffs bear the burden of disproving the veracity of those records and establishing that they were not appropriately compensated for the work that they performed. If Eileek Lora's testimony were not accepted by the trier of fact, the Plaintiffs would be hard pressed to prove their case.

Further litigation here would cause additional expense and delay. Additional discovery would be required to establish liability and prove damages. In addition, the parties likely would file cross-motions for summary judgment on Defendants' defenses. If the Court denied the motions, a fact-intensive trial would be necessary. A trial would be lengthy and consume tremendous time and resources. Any judgment would likely be appealed. The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of approval.

### 2.    The Reaction of the Class Has Been Positive (Grinnell Factor 2)

"It is well-settled that the reaction of the class to the settlement is perhaps the most

significant factor to be weighed in considering its adequacy." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002).  The lack of class member objections may itself be taken as evidencing fairness of the settlement.  *Slomovics v. All for a Dollar*, 906 F. Supp. 146, 150 (E.D.N.Y. 1995).  Here, there were no objections.  Cafaro Decl. at ¶ 46.  This is strong evidence of the fairness of the settlement.  *Lizondro-Garcia*, 2014 U.S. Dist. LEXIS 143165, at *11-12 (finding the reaction of the class to be "extremely positive" where no class member objected and only one opted out) (collecting cases).

Here none of the over 135 Class Members requested exclusion.  Cafaro Decl. at ¶ 45. This too supports final approval. *See*, *Kochilas*, 2015 U.S. Dist. LEXIS 135553, at *13-14 (finding an "overwhelmingly favorable response" where no class members submitted a timely objection to the settlement or requested exclusion, and thus recommended final approval of the settlement) (collecting cases).

### 3.      Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

Although preparing this case through trial would require hundreds of hours of discovery for both sides, the parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). [T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement…[but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176.

The discovery conducted here meets this standard.  The Parties engaged in extensive discovery, including, but not limited to, producing payroll and time keeping documents.  Cafaro

Decl. at ¶ 22.  Plaintiffs' Counsel interviewed many Class Members about their duties, the hours

they worked, and their practices with respect to recording time.  *Id.*  This factor weighs in favor

of final approval.  *Sewell v. Bovis Lend Lease LMB, Inc.*, 09 Civ. 6548, 2012 U.S. Dist. LEXIS

53556, at *21-22 (S.D.N.Y. Apr. 16, 2012) (granting final approval where the parties exchanged

documents and class counsel interview class members).

### 4.    Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)

Although Plaintiffs believe their case is strong, it is subject to considerable risk.

"Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104,

126 (S.D.N.Y. 1997).  Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on

the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp.

917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv.,* 2007 U.S. Dist. LEXIS

46223, at *19-20 (S.D.N.Y. June 22, 2007).  A trial on the merits would involve significant

risks for Plaintiffs as to both liability and damages.   Plaintiffs would have to overcome

Defendants' good faith defenses and their reliance on various payroll data which allegedly

stated the dates and hours the class members worked.  If Plaintiff Lora's testimony were not

accepted, the Plaintiffs would be hard pressed to prove their case. While Plaintiffs believe that

they could ultimately establish both liability and damages, this would require significant

factual development.  Plaintiffs' Counsel are experienced and realistic, and understand that

the resolution of liability issues, the outcome of the trial, and the inevitable appeals process

are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates

these uncertainties.  This factor therefore weighs in favor of approval.  *See, Morris*, 859

F.Supp 2d. at 620 ("the fact-intensive nature of Plaintiffs' off-the-clock claim presents risk.")

The proposed settlement alleviates these uncertainties.  This factor therefore weighs in favor of approval.

### 5.   Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6)

The risk of obtaining certification and maintaining it through trial is also present. The Court has not certified the Rule 23 Class for all purposes, and the Parties anticipate that such a determination would be reached only after further discovery and exhaustive briefing. In opposing class certification, Defendants would likely argue that individualized questions preclude class certification, in essence arguing that Plaintiffs would not be able to meet their burden with regards to commonality and typicality.  Moreover, the Defendants would argue that the payroll documents were genuine, which, if believed, would reduce, or even eliminate many class members' claims. *See*, *Raniere*, 310 F.R.D. at 218-19 (explaining risk of establishing liability and maintaining the class action through trial, and finding such risk supported final approval of the class).  Settlement eliminates the risk, expense, and delay that permeates such processes.  As such, this factor weighs in favor of approval.

### 6.   Defendants' Ability to Withstand a Greater Judgment is Not Determinative (*Grinnell* Factor 7)

Defendants maintain that they cannot withstand a greater judgment.  Even if the Defendants could withstand a greater judgment, their ability to do so, "standing alone, does not suggest that the settlement is unfair." *In re Austrian*, 80 F. Supp. 2d at 178 n.9.  Thus, this factor is neutral and does not preclude the Court from granting preliminary approval.

### 7.   The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

Defendants agreed to pay a substantial amount to settle this action, $627,500.00. This represents considerable value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs overcame motions to decertify any class or collective, succeeded on all claims at trial, and survived an appeal.

Whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well- settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) (emphasis added); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement where the "best possible recovery would be approximately $121 million").

Here, the settlement provides much more than "a fraction of the potential recovery." Each Class Member will receive a payment based upon the number of weeks they worked during the relevant period. Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

**8.**     <u>**Weighing the Factors**</u>

The *Grinnell* factors weigh in favor of issuing preliminary approval of the settlement. The settlement, on its face, is fair, adequate, and reasonable, and thus, the Court should grant final approval of the settlement.

**V.     APPROVAL OF THE FLSA SETTLEMENT IS APPROPRIATE UNDER FEDERAL LAW**

In their motion for preliminary certification, the Plaintiffs requested that the Court approve the settlement pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d. 199 (2d Cir. 2015) and its progeny.  *See*, D.E. 86-1 at § VIII.  On August 16, 2019 the Court approved the settlement as fair and reasonable "to the extent necessary for preliminary approval."  *See*, D.E. 88 at ¶ 10.

To the extent necessary for final approval of the settlement the Plaintiffs request the Court approve the settlement of the FLSA claims which were brought as a collective action.  Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it.  *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84 (S.D.N.Y. 2001).  FLSA collective actions do not implicate the same due process concerns as Rule 23 actions because a failure to opt into a collective action does not prevent a party from bringing a suit under the FLSA at a later date.  *Lizondro-Garcia*, 2014 U.S. Dist. LEXIS 143165, at *15-16.  "Accordingly, an FLSA settlement is examined with less scrutiny than a class action settlement; the court simply asks whether the settlement reflects a fair and reasonable compromise of disputed issues that was reached as a result of contested litigation."  *Id.* at *16; *see also Wolinsky v. Scholastic, Inc.* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).  Moreover, where the Court approves a settlement under Rule 23, it must also approve the settlement under the FLSA.  *See*, *Henry v. Little Mint, Inc.*, 2014

U.S. Dist. LEXIS 72574, at *18 (S.D.N.Y. May 23, 2014)(McMahon, D.J.) ("[S]atisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement").

In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of the circumstances, including the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d at 335.

### A.    **Plaintiffs' Range of Possible Recovery**

Here, given the participation rate and that the settlement is not reversionary in nature, each Authorized Claimant who is releasing their FLSA claims will receive approximately **90.6%** of their wage claims ***after*** fees, costs, expenses, and service awards. Cafaro Decl. at ¶ 34. This is certainly toward the higher end of the range of reasonableness of recovery, particularly after considering the obstacles Plaintiffs faced. *See*, *Rodriguez-Hernandez v. K Bread & Co.*, No. 15-cv-6848 (KBF), 2017 U.S. Dist. LEXIS 78034, at *10 (S.D.N.Y. May 23, 2017) (approving a settlement of 26% of potential damages given "bona fide disputes" between the parties and litigation risks); *Felix v. Breakroom Burgers & Tacos*, 15-cv-3531 (PAE), 2016 U.S. Dist. LEXIS 30050, at *4-5 (S.D.N.Y. Mar. 8, 2016) (approving settlement amount of less than 25% of the maximum possible recovery); *Beckert v. Rubinov*, 15-cv-1951 (PAE), 2015 U.S. Dist. LEXIS 167052, at *4-5 (S.D.N.Y. Dec. 14, 2015) (finding a proposed settlement sum of

25

approximately 25% of the estimated maximum possible recovery fair and reasonable).   The settlement will also enable the Plaintiffs to avoid the burden of testifying, the hardship of waiting for the payment of any recovery and proving class wide damages.

### B.   Burden and Expense of Trial

If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the potential outcome. *See Morris*, 859 F. Supp. 2d at 620.   In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the Plaintiff…against the relief offered by the Settlement."   *Sewell v. Bovis Lend Lease LMB, Inc.*, 2012 U.S. Dist. LEXIS 53556 at *22.   Settlement enables the parties to avoid the burden and expense of preparing for trial.   Although Defendants produced records, Plaintiffs allege that they do not accurately reflect the actual hours worked.   As a result, the parties would require depositions and additional discovery to support their position which increases the costs of litigation.   The settlement eliminates risks and ensures that the plaintiff will recover most of his damages.

### C.   Litigation Risks

The Parties respectfully refer to the Court to Section IV (4), (5) of this brief which state the litigation risks of this class action.   In sum, although Plaintiffs believe their case is strong, it is subject to considerable risk.   A trial on the merits would involve significant risks for Plaintiffs as to both liability and damages. Plaintiffs would have to overcome Defendants' good faith defenses and their reliance on various payroll data which allegedly stated the dates and hours the class members worked.   The risk of obtaining certification and maintaining it through trial is also present.   Settlement eliminates the risk, expense, and delay that permeates such processes.   There is also the risk that Defendants will appeal any determination of class or collective certification

and seek to decertify the class and collective.  Risk, expense, and delay permeate such a process, and this settlement eliminates this risk, expense, and delay.  Settlement thus permits Plaintiffs to avoid the risk of obtaining no recovery at trial.  *Gomez v. Bogopa Madison LLC*, No. 17-CV-5006 (RA), 2017 U.S. Dist. LEXIS 211003, at *4-5 (S.D.N.Y. Dec. 21, 2017).

### D.  Arm's-Length Negotiation

Here, the Parties participated in arm's length settlement discussions in order to arrive at this settlement.  After a failed mediation session with a private mediator, the parties continued their arms' length negotiations to arrive at the settlement in this action.  As such, the settlement involves a clear and *bona fide* wage dispute in contested litigation, which was resolved through an arm's-length settlement process, it should be granted judicial approval.

### E.  Risk of Fraud or Collusion

This settlement was reached after intensive negotiations between experienced counsel who duly counseled their respective clients on the benefits and risks of continued litigation. Moreover, the settlement occurred during negotiations before a private mediator who is well known for settlement wage and hour class actions.  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4.  There was no fraud or collusion in the present matter and the Court should approve the settlement.

### F.  Weighing the Factors

Here, each of the *Wolinsky* factors weigh in favor of finding the Agreement, fair and reasonable.  As such, the Court should approve the settlement.  *See*, *Lizondro-Garcia*, 2014 U.S. Dist. LEXIS 143165, at *16.

## VI.    THE REQUESTED SERVICE PAYMENTS ARE REASONABLE AND SHOULD BE APPROVED

The Service Awards, $10,000.00 to each Service Awardee except Plaintiff Lora for whom we are requested $15,000.00 are consistent with payments made to plaintiffs in other wage and hour cases in this circuit.   They service awards are intended to compensation the Service Awardees for their willingness to serve the Class, the service they rendered, risks they bore, and opportunities sacrificed to ensure a favorable class settlement.   Thus, the request should be granted by the Court.

The Service Awardees have made important contributions to the prosecution and fair resolution of this action on behalf of the Class.  Cafaro Decl. at ¶¶ 89-95.  The Service Awardees assisted Class Counsel's investigation and prosecution of the claims by providing detailed factual information regarding their duties and responsibilities, the hours that they worked, and the duties of other Class Members.  *Id*. at ¶¶ 90, 93.  The Service Awardees responded to document requests and interrogatories, regularly communicated with Class Counsel to assist with their investigation of the facts.  *Id*. at ¶¶ 91, 93.  Before the Service Awardees left the Defendants' employ, several of them assisted in the efforts to obtain documentation in support of the underlying claims, exposing themselves to risk of retaliation, going as far as criminal prosecution.  *Id*. at ¶ 94. Additionally, all of the Named Plaintiffs were subjected to baseless counterclaims, some of which resulted in contact with the police department, and others were exposed to the risk and fear of criminal prosecution.  *Id*. at ¶ 95.  Class Counsel even coordinated meetings with detectives, including arranging for one of the Service Awardees to appear so they would have a desk appearance ticket issued which obviated the need for a formal arrest.  See *id.*; N.Y Crim. Prec.

Law § 150.20.  The Service Awardees helped Class Counsel prepare for the mediation and were available during the mediation to communicate with Class Counsel to help respond to Defendants' arguments.  Moreover, Ms. Lora went above and beyond in providing help to Plaintiffs' counsel throughout the discovery process.  *Id*. at ¶¶ 89, 92.  Her anticipated testimony, that she was personally ordered by the Defendants to falsify their time records, was instrumental in achieving the results herein.  *Id*. at ¶ 92.  She has also been our first point of contact when communicating with the Class Members.  *Id*..

Courts acknowledge that plaintiffs play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny.  *Velez*, 2007 U.S. Dist. LEXIS 46223, at *23.  "[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.").  In examining the reasonableness of a requested service payment, courts consider: (1) the existence of special circumstances, including the personal risk incurred by the service awardees; (2) the time and effort expended by the service awardees in assisting the prosecution of the litigation; and (3) the ultimate recovery in vindicating statutory rights.  *Frank*, 228 F.R.D. at 187.

A.     **The Service Awardees Assumed Significant Risk**

In assessing the reasonableness of service awards, courts consider the risks assumed in serving the interests of the class. *See Frank*, 228 F.R.D. at 187; *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 U.S. Dist. LEXIS 12762, at *4 (S.D.N.Y. Feb. 9, 2010) ("Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts."). In the employment context, where workers are often blacklisted if they are considered "trouble

29

makers," plaintiffs who sue their employers are particularly vulnerable to retaliation. *See Frank*, 228 F.R.D. at 187-88; *see also Velez*, 2007 U.S Dist. LEXIS 46223, at \*23 (observing that the plaintiffs "exposed themselves to the prospect of having adverse actions taken against them by their former employer and former co-workers").

Even where there is not a record of actual retaliation, plaintiffs merit recognition for assuming the risk of retaliation for the sake of absent class members. *See Sewell*, 2012 U.S. Dist. LEXIS 53556, at \*41 ("Plaintiffs litigating cases in an employment context face the risk of subjecting themselves to adverse actions by their employer."); *Guippone v. BH S&B Holdings, LLC*, No. 09 Civ. 1029, 2011 U.S. Dist. LEXIS 126026, at \*20 (S.D.N.Y. Oct. 28, 2011) ("Even where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members."); *Frank*, 228 F.R.D. at 187-88 ("Although this Court has no reason to believe that Kodak has or will take retaliatory action towards either Frank or any of the plaintiffs in this case, the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded.").

Here the Service Awardees faced significant risks due to the nature of the industry in which they work.  Moreover, although the Service Awardees no longer worked for Defendants when they joined the lawsuit, they risked retaliation from their current employers and put their ability to secure future employment at risk as well.  *See, Sewell*, 2012 U.S. Dist. LEXIS 53556, at \*42 ("[F]ormer employees . . . fac[ed] potential risks of being blacklisted as 'problem' employees."); *Guippone*, 2011 U.S. Dist. LEXIS 126026, at \*20 ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Parker*, 2010 U.S. Dist. LEXIS 12762, at \*4

("[F]ormer employees put in jeopardy their ability to depend on the employer for references in connection with future employment."). Service awards "provide an incentive to seek enforcement of the law despite these dangers." *Parker*, 2010 U.S. Dist. LEXIS 12762, at *4-5.

**B.     The Service Awardees Expended Significant Time and Effort**

The Court should grant the requested service awards based on the significant work that the Service Awardees undertook on behalf of the class. Courts recognize the important factual knowledge that plaintiffs bring to employment class actions, including information about employer policies and practices that affect wages. *See Frank*, 228 F.R.D. at 187 (recognizing the important role that plaintiffs play as the "primary source of information concerning the claims[,]" including by responding to counsel's questions and reviewing documents). Here, the Service Awardees contributed significant time and efforts to the case.

This time and effort supports the requested service awards. *See Sewell*, 2012 U.S. Dist. LEXIS 53556, at *43 (granting service awards of $15,000 and 10,000 to named plaintiffs where they "provided detailed factual information to class counsel for the prosecution of their claims and made themselves available regularly for any necessary communications with counsel").

**C.     The Ultimate Recovery Supports the Requested Payments**

The requested service awards amount to approximately 12% of the total recovery, which is a reasonable percentage. *See Parker*, 2010 U.S. Dist. LEXIS 12762, at *5-6 (finding that service awards totaling 11% of the total recovery are reasonable "given the value of the representatives' participation and the likelihood that class members who submit claims will still receive significant financial awards").

31

The service awards requested here of $10,000 for each Service Awardee except for Mr. Lora for an aggregate total of $65,000.00 are reasonable and well within the range awarded by courts in this District in similar wage and hour class actions.  *See, e.g., Capsolas v. Pasta Resources Inc.*, No. 10 Civ. 5595, 2012 U.S. Dist. LEXIS 144651, *26, (S.D.N.Y. Oct. 5, 2012) (approving service awards of $20,000 and $10,000 for class representatives); *Lovaglio v. W & E Hospitality, Inc.*, No. 10 Civ. 7351, 2012 U.S. Dist. LEXIS 94077, *9 (S.D.N.Y Jul. 5 2012) (approving service awards of $10,000 to three class representatives); *Reyes v. Altamarea Group*, 2011 U.S. Dist. LEXIS 115984, *24 (S.D.N.Y Aug. 16 2011) (approving service awards of $15,000 to three class representatives and $5,000 to fourth class representative); *Torres v. Gristede's Operating Corp.*, Nos. 04 Civ. 3316, 08 Civ. 8531, 08 Civ. 9627, 2010 U.S. Dist. LEXIS 139144, *22 (S.D.N.Y. Dec. 21, 2010) (approving service awards of $15,000 each); *Khait v. Whirlpool Corp.*, No. 06-cv-6381, 2010 U.S. Dist. LEXIS 4067, *26 (E.D.N.Y Jan. 20, 2010) (approving service awards of $15,000 and $10,000).

## VII.   CLASS COUNSEL IS ENTITLED TO THE REQUESTED FEE

Class Counsel respectfully moves the Court for an award of attorneys' fees and reimbursement of expenses in the total amount of Two Hundred Nine Thousand One Hundred Sixty Six Dollars and Sixty Seven Cents ($209,166.67) which is One Third (33.333%) of the Gross Settlement Fund.

Class Counsel have spent approximately 430 attorney, paralegal, and support staff hours investigating, litigating, and settling this litigation.  Cafaro Decl. at ¶ 76.  Multiplying these hours by the hourly rate of each attorney, paralegal, and staff member results in a lodestar amount of approximately $138,000.00.  *Id*. at ¶ 77.

Class Counsel's efforts to date have been without compensation, and their entitlement to payment has been wholly contingent upon the results received. *Id*. at ¶ 86. For the reasons set forth below, Class Counsel respectfully submits that the attorneys' fees requested are fair and reasonable under the applicable legal standards and should be awarded in light of the contingency risk undertaken and the result achieved in this case.

### A.   The Percentage Method Is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases in the Second Circuit

In wage-and-hour class action lawsuits, public policy favors a common fund attorneys' fee award. See *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d at 121; *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 102 (E.D.N.Y. 2015); *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216, 2014 U.S. Dist. LEXIS 105596, at *26 (S.D.N.Y. July 31, 2014). "Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by private attorneys general, attorneys who fill . . . [that] role must be adequately compensated for their efforts." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013) (citations and internal quotation marks omitted); *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 U.S. Dist. LEXIS 1120, *9 (S.D.N.Y. Jan. 7, 2010) ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").

Although there are two ways to compensate attorneys for successful prosecution of statutory claims—the lodestar method and the percentage-of-the-fund method, *see McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)—the trend in this Circuit is to use the percentage-of-the-fund method in common fund cases like this one. *Id*.; *Wal-Mart Stores*, 396 F.3d at 121; *Behzadi v. Int'l Creative Mgmt. Partners, LLC*, No. 14 Civ. 4382, 2015 U.S. Dist.

LEXIS 90117, *6-7 (S.D.N.Y. July 9, 2015) (Awarding attorneys' fees in the amount of one third of the maximum settlement fund available on a "claims made" settlement).

There are several reasons that courts prefer the percentage method. First, the percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive to attorneys to resolve cases efficiently and to create the largest common fund out of which payments to class members can be made. *Wal-Mart Stores*, 396 F.3d at 121 (internal quotation marks and citation omitted); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014).

The percentage method is also closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *see also Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 177 (E.D.N.Y. 2012) ("[T]he percentage method is intended to mirror the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients."); *Strougo ex rel. The Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) ("[T]he percentage method is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients.").

This rationale is consistent with the Second Circuit's rationale where it held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay. *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany & Albany County Board of Elections*, 522 F.3d 182, 191 (2d Cir. 2008). While *Arbor Hill* does not address a common fund fee petition, it supports use of the percentage-of-the-fund method because that method is "similar to private practice where counsel operates on a contingency fee, negotiating

34

a reasonable percentage of any fee ultimately awarded." *Sewell*, 2012 U.S. Dist. LEXIS 53556, at \*29 (citing *Arbor Hill*, 522 F.3d at 191).

Second, the percentage-of-the fund method promotes early case resolution and removes the motivation for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours. *See Wal-Mart Stores*, 396 F.3d at 121. This is a significant downside of the lodestar method. *Id*.

Third, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Asare v. Change Grp. N.Y., Inc.*, No. 12 Civ. 3371, 2013 U.S. Dist. LEXIS 165935, \*46 (S.D.N.Y. Nov. 18, 2013). The "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line item fee audits." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000) (citation omitted). While courts still use the lodestar method as a "cross check" when applying the percentage-of-the-fund method, they are not required to scrutinize the fee records as rigorously. *Goldberger*, 209 F.3d at 50; *see In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (using an "implied lodestar" for the lodestar cross check).

Fourth, the percentage method is "based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) (citation and internal quotation marks omitted). Unless absent class members "contribute to the payment of attorney's fees incurred on their behalves, they will pay nothing for the creation of the fund and their representatives may bear additional costs." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980).

35

**B.      The *Goldberger* Factors Support the Requested Fee Award**

District Courts should be guided by the so-called "*Goldberger* factors" in determining a reasonable common fund fee, including: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50 (citing *In re Union Carbide Corp. Consumer Products Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989)). Here, all the *Goldberger* factors weigh in favor of awarding Class Counsel their requested fees.

**1.      Class Counsel has expended Significant time and effort on this case**

Class counsel made significant efforts to achieve the settlement in this action.  Before filing this lawsuit, Class Counsel conducted a thorough investigation into the merits of the potential claims and defenses.  Cafaro Decl. at ¶ 22.  Class Counsel investigated the merits of the Class's underlying claims, their damages, and the propriety of class certification.  *Id*. at ¶ 22.

On June 29, 2016, the Named Plaintiffs filed a class and collective complaint.  D.E. 1. Before engaging in mediation, Defendants produced hundreds of pages of documents so that Plaintiffs could analyze the Class Members' alleged damages.  *Id*. at ¶ 22.  Moreover, Class Counsel also interviewed many Class Members, and obtained declarations from Plaintiffs in order to respond to Defendants' interrogatories and requests for documents.  *Id*.

On February 21, 2018, the parties participated in a day-long mediation session. *Id*. at ¶ 26. Although progress was made, no settlement was reached. *Id.*  After further discovery and follow-up telephone calls the parties reached a substantial agreement on all the material terms, *Id.* at 28.

On September 26, 2018, the Plaintiffs filed a Motion for Preliminary Approval.  D.E.

78.  After the parties jointly revised the settlement agreement and made other Court required edits, the Parties filed a Second Motion for Preliminary Approval.  The Court ordered the Parties to make edits to the Notice to the Class.  After the parties jointly revised the Notice, the Court preliminarily approved the Parties' proposed settlement, conditionally certified the proposed Rule 23 Settlement Class, appointed William Cafaro Esq. of the Law Offices of William Cafaro as Class Counsel, approved the proposed notice and distribution of same, ordered a class action settlement procedure and set the final fairness hearing for May 1. 2020. D.E. 88.

In prosecuting and settling this case, Class Counsel expended approximately 450 hours of attorney, paralegal, and staff member time, resulting in a lodestar of $147,000.00.  Cafaro Decl. at ¶¶ 76-7.  These hours are reasonable for a case like this one and were compiled from contemporaneous time records maintained by each attorney, paralegal, and staff member participating in the case.  *Id*. at ¶ 76.

The requested fee is not based solely on time and effort already expended; rather, it is also meant to compensate Class Counsel for time that will be spent administering the settlement in the future.  *See, Tiro*, 2013 U.S. Dist. LEXIS 129258, at *38 (fee award is also meant to compensate Class Counsel for future settlement administration).  In Class Counsel's experience, administering class settlements of this nature and size requires a substantial and ongoing commitment, especially where the settlement payments occur over a period of time.  Cafaro Decl. at ¶ 78.  Since the notice was mailed, Class Counsel have responded to numerous inquires about the settlement. *Id*. As is common in wage and hour class actions, Class Counsel expect to respond to more Class Member inquiries after final approval, especially after checks are issued to Class Members. *Id*. As such, this factor weighs in favor of Class Counsel's requested award.

## 2.      The large and complex nature of this litigation warrants the award of

**attorneys' fees being requested**

This case involved over 130 Class Members and complex legal and factual questions. See, *Goldberger*, 209 F.3d. at 50 (assessing the magnitude and complexity of the litigation as one of the criteria for determining a reasonable fee award). "FLSA claims typically involve complex mixed questions of fact and law… These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981). "Among FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to Rule 23 in the same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b)." *Sukhnandan*, 2014 U.S. Dist. LEXIS 105596, at *31. "Justice is served and consistency and efficiency are achieved by having the litigation in one forum because the same set of operative facts are being applied and analyzed under both statutory frameworks." *Id.* at *31-32; *see also Ansoumana*, 201 F.R.D. at 89.

Moreover, Plaintiffs' claims hinged on several fact intensive inquires – (i) whether Defendants had a policy of not paying their employees for all hours worked in a workweek; (ii) whether Defendants had a policy of not paying employees for all hours worked over 40 in a workweek; and (iii) whether the Defendants ordered First Named Plaintiff Eileek Lora to change the payroll records. Although Class Counsel believes that Plaintiffs ultimately would have prevailed, these issues nonetheless presented considerable risk and support approval of the requested fees. *See Frank*, 228 F.R.D. at 189  (mixed questions of fact and law supported court's award of attorneys' fees representing approximately 40% of the common fund). As such, this factor weighs in favor of Class Counsel's requested award.

### 3.      Class Counsel took on a large amount of risk in prosecuting this case

Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award. *Grinnell*, 495 F.2d. at 470-71. "[D]espite the most vigorous and competent of efforts, success is never guaranteed." *Id.* at 471. "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success." *Id.* at 470. "Risk should be considered 'as of when the case is filed.'" *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d at 351 (quoting *Goldberger*, 209 F.3d at 55).

Class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming. Any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Class Counsel stood to gain nothing in the event the case was unsuccessful. Cafaro Decl. at ¶ 86. This assumption of risk supports the requested fee award. *See*, *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d at 351 (fact that "the law was unsettled on several issues relating to liability and/or damages" supported fee request). Moreover, the litigation has been highly contested. Defendants contend that at all times their employees were properly compensated and acted in good faith in attempting to properly compensation the Class. As such, this factor weighs in favor of granting the requested fees.

### 4.      Class Counsel's representation has been of the highest quality

"To determine the 'quality of the representation,' courts review, among other things, the

recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y. Jan. 31, 2007). The recovery obtained in this action was substantial. Defendants have agreed to pay $627,500 to settle this litigation which will not revert back to the Defendants. Moreover, each Class Member that became an Authorized Claimant by sending in the claim form will receive **90.6 %** of their wage claims ***after*** fees, costs, expenses, and service awards. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement is considerable.

The quality of representation also supports Class Counsel's request. Class Counsel has substantial experience prosecuting large-scale wage and hour class and collective actions. *See, e.g. Mendes-Garcia v. 77 Deerhurst Corp.*, 2014 U.S. Dist. LEXIS 188290, at *12-13 (S.D.N.Y. Aug. 18, 2014) (William Cafaro, Esq. being appointed class counsel on a wage and hour action with approximately 175 opt ins); *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 178 (E.D.N.Y 2012) (Finding Mr. Cafaro "well qualified" to conduct a class litigation and approving Mr. Cafaro's requested fee of 1/3 of the settlement fund on a motion for final approval of a FLSA class settlement). Mr. Cafaro has also been commended by the Honorable Magistrate Lois Bloom for his "exemplary service" to his client in a FLSA matter. *Martinez v. Bella Bianchi's Ltd., et al.*, 16-cv-6800 (LB), D.E. 22, fn 2 (E.D.N.Y Aug. 15, 2017). The Honorable Richard J. Sullivan, who now serves on the Court of Appeals for the Second Circuit, commented at a fairness hearing that "Mr. Cafaro does these cases, knows what he's doing, and has carved out some expertise in the field". Cafaro Decl. at ¶ 53. Moreover, the background of the attorneys and staff members who worked on this action supports the fee award requested. Cafaro Decl. at ¶ 48-74. Class Counsel's representation in this action weighs in favor of the requested fee.

## 5.     The requested fee is reasonable in relation to the settlement

Class Counsel's fee request of one third (1/3) of the Settlement Fund, inclusive of litigation costs, is well ***below*** what courts have awarded as attorneys' fees in wage and hour cases. *See, e.g. DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494, 2015 U.S. Dist. LEXIS 65261, at *13-15 (S.D.N.Y. May 7, 2015) (approving final settlement and attorneys' fee request of one third of the settlement fund as well as reasonable out of pocket costs); *Sukhnandan*, 2014 U.S. Dist. LEXIS 105596, at *26-28. *43-44 (same); *Willix v. Healthfirst, Inc.*, 2011 U.S. Dist. LEXIS 21102, at *15-19 (E.D.N.Y. Feb. 18, 2011). Accordingly, this factor weighs in favor of approval of the requested fees.

### 6. <u>Public policy weighs in favor of awarding attorneys' fees</u>

In wage-and-hour class action lawsuits, public policy favors a common fund attorneys' fee award. *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, No. 09 Civ. 486, 2012 U.S. Dist. LEXIS 144446, at *19 (E.D.N.Y. Oct. 4, 2012); *Willix*, 2011 U.S. Dist. LEXIS 21102, at *16-*17 (citation omitted). Where relatively small claims can only be prosecuted through aggregate litigation, "private attorneys general" play an important role. *Id. citing Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338–39 (1980). Attorneys who fill the private attorney general role must be adequately compensated for their efforts. *Id.* If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Id., citing Goldberger* 209 F.3d at 51 (commending the general "sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest"). Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and state wage and hour laws. *Willix*, 2011 U.S. Dist. LEXIS 21102, at *17.

**C.**     **The Lodestar Cross Check Further Supports the Requested Award to Class Counsel**

Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and to loosely use the lodestar method as a "cross check." *Goldberger*, 209 F.3d at 50. In calculating the lodestar for cross check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court." *Id*. Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Id*. After calculating the lodestar as the product of the number of hours reasonably expended multiplied by a reasonable hourly rate, "Courts then consider whether a multiplier is warranted based on factors such as (1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved." *Elliot v. Leatherstocking Corp.,* 10-cv-0934, 2012 U.S. Dist. LEXIS 171443, at *17 (N.D.N.Y Dec. 4, 2012).

Here Class Counsel's lodestar on the case is calculated utilizing reasonable hourly rates. This includes $75.00 for legal assistants, $175.00 for paralegals, $275.00 for associates, and $450.00 for partners.  These rates are in line with the reasonable rates for attorneys and staff in this district with similar experience.  *See, e.g. Griffin v. Astro Moving & Storage Co. Inc.*, No. 11-CV-1844 (MKB), 2015 U.S. Dist. LEXIS 43326, 2015 WL 1476415, at *8 (E.D.N.Y. Mar. 31, 2015) (reasonable hourly rates are $300 to $450 for partners, $200 to $325 for senior associates, and $100 to $200 for junior associates); *Pall Corp. v. 3M Purification Inc.*, No. CV 97-7599 (RRM)(ETB), 2012 U.S. Dist. LEXIS 76755, at *11 (E.D.N.Y. June 1, 2012) ("[r]ecent opinions issued by courts within the Eastern District of New York have found reasonable hourly

42

rates to be approximately $300—$450 for partners, $200—$325 for senior associates, and $100—$200 for junior associates.") (collecting cases).  Using these rates, multiplied by the reasonable hours spent by Class Counsel in litigating and settling this matter, results in a lodestar of approximately $138,000.00.  Cafaro Decl. at ¶ 77.  The time spent by Class Counsel is described in the Cafaro declaration and the contemporaneous time records attached thereto.  Cafaro Decl. at ¶ 76; Ex. 3.

After assessing the number of hours expended and the hourly rate, courts then consider whether a multiplier is warranted based on factors such as: "(i) the contingent nature of the expected compensation for services rendered; (ii) the consequent risk of non-payment viewed as of the time of filing the suit; (iii) the quality of representation; and (iv) the results achieved."  *In re Ivan F. Boesky Sec. Litig.*, 888 F. Supp. 551, 561-62 (S.D.N.Y. 1995).  Class Counsel is requesting a multiplier of approximately 1.5.  This multiplier falls within the range granted by courts in this circuit.  Courts regularly award comparable lodestar multipliers (and in many cases multipliers are even higher).  *See, e.g. Beckman*, 293 F.R.D. at 481-82 (approving fee of 6.3 times lodestar); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (appendix listing nationwide class action settlements where multiplier ranged up to 19.6 times lodestar); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed"); *Yuzary v. HSBC Bank USA, N.A.*, 2013 U.S. Dist. LEXIS 144327, at *29 (S.D.N.Y. Oct. 2, 2013) (awarding multiplier of 7.6 in wage and hour misclassification class action); *Sewell*, 2012 U.S. Dist. LEXIS 53556, at *38.

While the multiplier represents a greater recovery than Class Counsel's lodestar, this should not result in penalizing Counsel for achieving an early settlement, particularly where, as here, the settlement amount represents a substantial portion of the amounts Class Members are

owed for the alleged wage and hour violations. *See Yuzary*, 2013 U.S. Dist. LEXIS 144327, at *29 (approving lodestar multiplier and noting that plaintiffs' counsel should not be penalized "for achieving an early settlement"); *Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531, 2014 U.S. Dist. LEXIS 135635, at *22 (S.D.N.Y. Sept. 23, 2014) (citing *Wal-Mart Stores*, 396 F.3d at 121 ("[T]he lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits."); *Vizcaino*, 290 F.3d at 1050 n. 5 (noting that "the lodestar method does not reward early settlement" and that "class counsel should [not] necessarily receive a lesser fee for settling a case quickly"); *Savoie v. Merchants Bank*, 166 F.3d 456, 461 (2d Cir. 1999) ("[T]he percentage-of-the-fund method also removes disincentives to prompt settlement, because plaintiffs' counsel, whose fee does not increase with delay, have no reason to drag their feet.").

In addition to the time already spent in this action, Class Counsel anticipates that it will have to perform work after the final approval hearing, including answering additional calls from Class Members, working with the Settlement Administrator to answer class member questions and ensuring that the Settlement Amount is administered in accordance with the Settlement Agreement.  Cafaro Decl. at ¶78.  This additional time also supports Class Counsel's lodestar multiplier and fee request.  *Clark*, 2010 U.S. Dist. LEXIS 47036, at *29 (holding fee request supported by fact that it would compensate class counsel not only "for time and effort already expended," but also "for time that they will be required to spend administering the settlement going forward").

## CONCLUSION

For the reasons stated above, the Parties respectfully request the Court (1) finally certify the settlement class; (2) grant final approval of the Settlement Agreement and Release; (3) grant final approval of the FLSA settlement; and (4) grant such other relief as may be fitting and proper

in the judgment of this Court.

For the reasons stated above, Plaintiffs further request the Court (1) award Class counsel attorneys' fees and costs in the amount of $209,166.67; (2) award service awards of $10,000.00 to each of the following Plaintiffs Jeffrey Gomez, Kevin Manco, Wilmer Marin, Bernardo Mendoza Galindo, Nicholas Mitrano, and Sergio A. Moscoso; (3) award a service award of $15,000.00 to First Named Plaintiff Eileek Lora; and (4) grant such other relief as may be fitting and proper in the judgment of this Court.

Dated:  New York, New York          **LAW OFFICES OF WILLIAM CAFARO**
     April 17, 2020

    _/s/ William Cafaro_____
William Cafaro, Esq. (WC 2730)
*Class Counsel*
108 West 39th Street, Suite 602
New York, New York 10018
Tel: (212) 583-7400
Fax: (212) 583-7401
E-mail:BCafaro@CafaroEsq.com